## APPEAL OF BLOOMSBURG SCHOOL DIRECTORS.

CERTIORARI, ETC., TO THE COURT OF QUARTER SESSIONS OF COLUMBIA COUNTY.

Argued April 11, 1888—Decided October 1, 1888.

When a board of school directors, by reason of being unable to agree upon the amount of salary to be paid, have failed to appoint a necessary teacher, it is such a neglect of duty as will authorize the Court of Quarter Sessions to declare their seats vacant and to appoint others in their stead.

Before GORDON, C. J., PAXSON, GREEN, CLARK and WILLIAMS, JJ.; TURNKEY and STERRETT, JJ., absent.

No. 222 January Term 1888, Sup. Ct.; court below, No. 60 September Term 1887, Q. S.

On October 4, 1887, there was filed the petition of Caleb Barton and others, taxable citizens of the Bloom school district and resident within the town of Bloomsburg, averring that William Rabb, Henry Rosenstock, William Kramer, James C. Brown, John Lawall and Isaac Hagenbuch, school directors in and for the town of Bloomsburg, which embraces the Bloom school district aforesaid, had been duly qualified and acting as school directors, and had neglected and refused to perform their duties enjoined by law, in the following particular, among others specified, viz.:

1. They have neglected and refused to appoint a sufficient number of teachers to put and keep the schools in operation, so far as the means of the district will admit.

Opinion of Court below.

The prayer was for a citation upon the said directors, to show cause why the court should not declare their seats vacant and appoint others in their stead, under the provisions of § 9, act of May 8, 1854, P. L. 618.

Three of the respondents filed a joint answer to the citation awarded and the other three, another, when, a replication being filed, *Mr. J. M. Clark* was appointed examiner, who filed the testimony submitted on November 11, 1887.

The facts averred in the answers and found by the court appear in the opinion filed on December 17, 1887, by ELWELL, P. J.:

In the petition of the six tax payers of the school district upon which this rule was granted, it is among other things complained and alleged that the directors "have neglected and refused to appoint a sufficient number of teachers to put or keep the schools in operation, so far as the means of the district will admit." Other matters charged relate to the individual acts or negligence of members of the board, or to the non-payment of teachers. The latter complaints, having been withdrawn, and the board of directors being responsible only for its negligence as a board, I dismiss from consideration all matters except the complaint first above mentioned.

[It appears by the evidence that there are within the school district of the town of Bloomsburg, about seven hundred children or persons entitled to be taught in the common schools of the district. There have been provided two expensive and commodious school buildings of sufficient capacity to accommodate all who desire to attend schools. During the last school year, and for several years previous, the directors have employed sixteen teachers, one of whom has been denominated the principal. In the Third street school building a High School is organized. In each of the rooms in the building on Third street and also in that on Fifth street in which there are two teachers, one is denominated principal. That is the position occupied heretofore by the teacher called the principal in the High School department. He is not a superintendent, but is chosen for the place because of his superior qualifications and experience as a teacher.] [1] [His office, if such it may be called, is that of a head master or teacher. The powers and duties of

the directors further than that, are not delegated by them to him.][2]

[Was it necessary that such a teacher, in addition to the other teachers, should be employed for the current school year? The directors have themselves answered that question in the affirmative, as is shown by their recorded minutes.][3]

At a full meeting of the board on June 24, 1887, on motion of Mr. Brown seconded by Mr. Rosenstock, it was unanimously agreed that the salaries of the teachers should be the same as last year, except the salary of principal of the High School, to wit: assistant to principal in the High School, $40. Then follows the amount of salaries to principals in other departments and the sum to be paid to the assistants in each of those departments. At the same meeting a motion by Mr. Brown, seconded by Mr. Lawall, to fix the salary of principal of the High School at $1,000, the same as last year, which was lost by a tie vote. Mr. Kramer moved to fix the salary of the principal at one hundred dollars a month for eight months. Mr. Rosenstock moved by way of amendment, accepted by Mr. Kramer, that the principal be employed for the whole year at a salary to be fixed. On a vote being taken, probably on a division of the question, it was unanimously agreed to employ the principal for the whole year and to pay him monthly at the salary to be fixed. The motion of Mr. Kramer was lost by a vote of three to three. At this meeting the other teachers, fifteen in number, were elected and assigned their positions in the schools, in the Third street and Fifth street school buildings. [At the same meeting it was unanimously resolved to advertise in the city papers for two weeks, that the directors would receive applications for the position of principal and superintendent, satisfactory references to be furnished and amount of salary required: motion by Mr. Rosenstock, seconded by Mr. Rabb, seconded by Mr. Brown.][3]

At a meeting on July 22d, a motion was made by Mr. Rabb, seconded by Mr. Rosenstock that Fred'k Ream be employed as principal at $800. Mr. Brown moved that Mr. Ream be notified to produce evidence that he was qualified, or stand an examination. Amendment lost by a tie vote, Brown, Hagenbuch and Lawall voting aye, and Rabb, Kramer and Rosenstock voting no. Motion of Mr. Rabb to employ Ream was lost by

a tie vote, the last three named voting aye and Brown, Hagen-
buch and Lawall voting no.

At a meeting held on July 29th a motion made by Mr. Brown
that the salary of the principal be fixed at $1,000 a year was lost
by a tie vote ; Brown, Hagenbuch and Lawall voting aye, and
the other three directors voting no. Mr. Rosenstock moved to
fix the salary at $900, which was not seconded. Mr. Kramer
moved, seconded by Mr. Rosenstock, to elect a principal with-
out fixing the salary; lost by a tie vote, Kramer, Rabb and
Rosenstock voting aye and the other directors voting no.

At a meeting held on August 12th a motion by Mr. Rabb to
fix the salary of the principal at $100 per month for eight
months and pay him in proportion for the extra work was lost
by a tie vote. On September 1st the directors met at the call
of the president of the board; it was moved by Mr. Kramer,
seconded by Mr. Rabb, that the schools be opened on Septem-
ber 5th; lost by a tie vote, Kramer, Rosenstock and Rabb
voting aye, and the other three directors voting no.

By resolution on June 24th it was unanimously agreed that
the school term begin on the first Monday in September.

[These records show conclusively that it is the unanimous
judgment of all the members of the board of directors that an
additional teacher is necessary for the instruction of the pupils
attending the schools.] [4] In the answer of Mr. Hagenbuch,
Mr. Brown, and Mr. Lawall, they aver that they have neglected
no duty enjoined on them by law; and Mr. Kramer, Mr. Rabb
and Mr. Rosenstock aver that *they* have neglected no duty·
enjoined on *them* by law. [We may concede that they are
conscientious in this conclusion, but the fact nevertheless
remains that a duty enjoined by law on the board of directors
as a board has not been performed.] [5] Whether the directors
who voted for the highest salary to be paid the principal were
right in persistently voting against employing the required
teacher, unless the other directors would concur with them, or
whether the directors voting for the lesser sum named were
right in persistently insisting that the other directors should
come to their figures, is not a question for the consideration of
the court, and in reference to it we express no opinion. [The
result of their failure to agree, so far as regards the question
before the court is chargeable to the board as a whole.] [6]

As a board, they levied taxes for paying teachers, raising thereby a sufficient sum to include the salary of the teacher called principal; pursuing in this the course which they, or at least a majority of them, had done in the previous year, and their predecessors had done for several years before, which salary was greater in every instance than that paid to any other teacher. These precedents were not binding upon the present directors. If such teacher were not necessary for the proper and successful working of the school, the sum paid him was an improper expenditure of the school fund. But the neglect to employ such teacher this year is not attempted to be justified upon that ground by the respondents. [They agree that the teacher as principal of the High School is necessary; they agree that they will elect one to fill the place,] [7] but fail to do so for one month after the school opened and from thence to this time. Six months have elapsed since the passage of the resolution to employ such teacher. Three months of the school term have expired and the disagreement between the directors still continues, detracting from the usefulness of at least one department of the schools in the district.

The evidence outside of that furnished by the record and testimony of the directors is, that the High School is overcrowded with pupils, the average number attending being between sixty and seventy. Miss Nora Finney, the assistant to the principal (provided there was a principal) testifies that she "cannot do justice to such a number of pupils in their grade." No person having any knowledge of schools could doubt this statement. It is confirmed by the testimony of pupils who could not be heard at the recitations for want of time on the part of the teacher. [Miss Finney complained of this crowded condition of the schools, as she supposed to the board, through the secretary.] [8] But if she did not complain, an official visit of any director as required by law would, at a glance have disclosed the fact that there were nearly twice as many pupils as could be properly taught by one person.

It is suggested in argument that this matter of employing teachers, the number of scholars to be taught by one teacher and the school at which a pupil shall be taught, are all matters for the discretion of the directors, and their discretion unless

flagrantly abused cannot be interfered with by the court. . This is clearly the law in every matter submitted by the law to the discretion of directors. It is applicable to cases where the board has exercised its discretion. It is not applicable where the discretion of one half the members lead them to conclusions directly opposite to the discretion of the other half. [In that case, the house being divided against itself, there is no exercise of discretion by the whole or a majority. In such case individual discretion is not to be regarded by the court.] [9]

When a board of directors has exercised its discretion in the performance of its duties the abuse of that discretion must be clear before the court will adjudge them guilty of official misconduct or neglect of duty. "We must," says Mr. Justice LOWRIE·in Freeman v. Sch. Directors, 37 Pa. 386, "be liberal and generous towards this discretion in reviewing the exercise of it." But it is nowhere held that refusal to exercise discretion, to the detriment of the interests of the public, shall be treated with great tenderness.

The statutory remedy for neglect of duty by all the members of a board of directors is that of removal from office. [Within the meaning of the law, all the members do neglect or refuse to do an act, where by an official vote there is a tie which prevents the doing of the required act.] [10.] It is the duty of the board to organize by the election of a president, but if all the members are present and less than four vote for one person there will be no election. If in such case the members persist in refusing to give one of their number a majority, the whole board must be removed.

The same must be the law if a tie vote prevents the opening of the schools or the selection of an admitted and unquestionably necessary number of teachers. If this be not so, three school directors have the power to nullify the school system in their district. The act of 1854 was intended to prevent any such result by summary proceedings to remove the delinquent board and appoint others in their stead. [The evidence in this case clearly showing that the board of directors have refused and neglected to perform a duty enjoined on them by law, it is our duty to declare their seats vacant.] [11]

And now December 17, 1887, it is adjudged that the first specification in the complaint filed on October 4, 1887 is true;

it is therefore ordered and adjudged that the seats of Isaiah Hagenbuch, J. C. Brown, John Lawall, Wm. Rabb, Wm. Kramer and Henry Rosenstock as school directors of the school district of the town of Bloomsburg be and the same are hereby declared vacant.

Eo die, Wm. H. Snyder, J. P. Tustin, R. H. Ringler, C. S. Furman, Geo. A. Herring and C. W. Neal, are appointed school directors of the school district of the town of Bloomsburg in the stead of the directors this day removed.

To the foregoing opinion and decree the respondents filed exceptions, and thereupon took this appeal and writ, specifying as errors:

1–11. The portions of the opinion embraced in [ ] [1 to 11]

13. The decree declaring the seats of the respondents as members of the school board to be vacant.

*Mr. James Scarlet* (with him *Mr. L. E. Waller*), for the appellants:

1. The act of May 8, 1854, P. L. 617, nowhere authorizes the creation or establishment of what is termed a High School, whose principal shall perform the duties of grading and supervision. Especially is this true of a district which does not contain 5000 inhabitants. However valuable such an office as local superintendent or principal might be, the law does not give to any district the right, in distinct terms, of appointing superintendents, except in cities and boroughs of over that number of inhabitants: Delano Land Co.'s App., 103 Pa. 353. Now, under the evidence, this board of directors was ousted for failure to elect a principal and superintendent of schools; that is to say, for a failure to perform an act forbidden by law.

2. The evidence shows and we contend: (1), That the teacher to be selected was a principal and superintendent, whom the board had no authority to appoint; (2), that all the schools were provided with teachers, and the question was the selection of an additional teacher to assist in the High School, and to oversee, grade and visit the other schools; (3), that the number of teachers is entirely a matter within the discretion of the board of directors, with which the courts have no power to interfere; and that, beyond the appointment of one teacher for each school, there is no obligation in law to

provide more : § 2, act of May 8, 1854; Morrisville Bor. Sch. D., 3 Phila. 185 ; Wharton v. Sch. Directors, 42 Pa. 364; Heard v. School District, 45 Pa. 93; Derry Tp. Sch. D., 2 Pears. 24. Courts must be liberal and generous toward this discretion, for a strict and jealous supervision of it would be fatal to the discretion itself : Freeman v. Sch. Directors, 37 Pa. 385.

Mr. *Geo. E. Elwell* (with him *Mr. E. R. Ikeler* and *Mr. Grant Herring*), for the appellees :

Our position is : (1) It is a duty enjoined by law upon school directors to establish a sufficient number of schools for the education of all persons between the ages of six and twenty-one years, who may apply for admission, and a sufficient number of schools implies a sufficient number of teachers. (2) The experience of past years has shown that the necessities of the district require sixteen teachers to keep the schools in operation so far as the means of the district will admit; and the custom of the board of directors of the Bloom school district, and all the testimony in the case, show that the position known as principal is not necessary to be filled. (3) This position of principal is not that of a borough or district superintendent; if it were, the appellants are estopped from setting this up as a defence. Wherefore, the appellants, having failed to perform a duty enjoined upon them by law, were properly removed from office.

OPINION, MR. JUSTICE GREEN :

In this case certain citizens and tax payers of the Bloom school district complain inter alia that the school directors of the district have neglected and refused to appoint a sufficient number of teachers to keep the schools in operation. Answers were filed by the six directors, in sections of three, each. In both the answers it is stated that fifteen of the teachers were appointed at the regular meeting for that purpose on June 24th and that this was all that were to be appointed except the principal. It appears by the evidence that sixteen was the number that were annually appointed for several years immediately previous, and there is no doubt under the pleadings and evidence that this was the number intended to be appointed

for the year in question, 1887.   As the necessity for more than fifteen is alleged in the petition and is not denied in either of the answers, but, on the contrary, both the answers and the recorded proceedings of the directors at their meetings conclusively prove that another was to be appointed but was not, it must be taken that the learned court below was right in holding that there was a necessity for another teacher to be appointed.   The evidence taken by the commissioner also fully justified the court in finding as a fact that there was such a necessity.   This being so, it is undoubtedly correct that the board of directors, when they failed to appoint an additional teacher, failed to perform an imperative duty.

The proceedings of the board show an unseemly, indeed, an absurd, contest over the amount of a salary to be paid to the additional teacher.   Three of the directors insisted that $800 should be paid and the other three insisted that the amount should be $1,000.   They refused to make any concessions to each other and actually allowed the appointment of a teacher to go by default, because they were unwilling to agree upon the amount of the salary.   Persons who have more pride of opinion than regard for the public interests committed to their care, are not suitable for the exercise of public functions. The best, in fact the only, course to adopt with them is to relieve them from the difficulties of their position and put others in their place.   This is what the learned court below did and in an excellent opinion fully vindicated the correctness of its action.

Proceedings affirmed.