## Butler Township School District Case.

*School law—Directors—Failure to organize—Acts of April* 22, 1863, *May* 8, 1854.

Where the members of a school board fail to meet on the first Monday of June, or within ten days thereafter, as required by the act of April 22, 1863, P. L. 523, a vacancy exists in their offices, and the court of quarter sessions may appoint other persons in their places.

Three members elect of a school board met within the time required by law, and declared the seats of the three other members vacant, on the ground that after due notice they had neglected to attend regular meetings of the board.   The excluded members within the time provided by law met and organized another board, and filled two vacancies for the same reason that the others had filled three.   Each board went through the forms of organization, and assumed authority in all matters relating to the schools.   On petition of more than six taxable inhabitants of the district, the court of quarter sessions found that the board had not been organized, removed both sets of directors, and appointed entirely new men in their places, under act of May 8, 1854, P. L. 618.   *Held*, not to be error.

Mr. Justice MITCHELL dissented, on the ground that the court had only jurisdiction to appoint new directors, when all the members of the board refused and neglected to perform their duties.

*Officers—Act of May* 8, 1854—*Constitution, art.* 7, § 4.

Article 7, § 4, of the constitution, providing for removal of officers from office, does not repeal § 9 of the act of May 8, 1854, P. L. 618, providing for removal of school directors.

Argued Oct. 19, 1893. Appeal, No. 41, Jan. T., 1893, by Owen Conroy et al., from order of Q. S. Schuylkill Co., appointing school directors. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Petition to remove school directors. Before PERSHING, P. J. The facts appear by the opinion of the Supreme Court.

The court made the following order:

" And now, Sept. 18, 1893, upon due consideration of the above petition and the evidence before the court, it is ordered and decreed that Terrence Ginley, Owen Conroy, George Kessler, John Lavelle and Joseph Builder, who allege that they constitute the legal board of directors for said Butler township school district, and also that George Miller, Thomas Nolan, William Waltersheid, John Cunningham, Martin Roland and John Burmeister, who claim that they alone constitute the legal board of directors for said district, be and they are hereby removed from office, as in the judgment of the court neither of said boards has been legally constituted and legally organized, and their acts as directors are without authority of law.

" And it is hereby ordered and decreed that the said Terrence Ginley, Owen Conroy, George Kessler, John Lavelle, Joseph Builder, George Miller, Thomas Nolan, William Waltersheid, John Cunningham, Martin Roland and John Burmeister be restrained and enjoined from acting as school directors for said Butler township school district, or in any way exercising the rights, powers and privileges pertaining to said office, and that they pay the costs of this proceeding ; and it is further ordered and decreed that without delay they hand over to the school board appointed at this date, all books, papers and moneys and property of whatsoever kind, belonging to the said school district, in their possession or control or in the possession or control of either of them.

" And it is further directed that George Gressang, Joseph R. Roads, Isaac F. Reed, (residents of South Butler,) John Cleary, Thomas McCormick and Stephen Horan, (residents of North Butler,) who are hereby appointed, shall constitute the board of directors of Butler township school district, until their successors are chosen according to law."

*Error assigned* was above order, quoting it.

*Guy E. Farquhar, Wm. Wilhelm* and *F. W. Bechtel* with him, for appellant.—The power of the quarter sessions to remove school directors from office is limited by § 9 of the act of 1854: Heard v. Woodcock Township School Directors, 45 Pa. 93 ; Derry Township School District, 2 Pearson, 24.

Section 9 of the act of 1854 is a highly penal enactment, and must therefore be construed strictly : Morrisville Borough School District, 3 Phila. 181.

If any member or members of the school board of Butler township have proceeded illegally in the performance of his or their duty, they have a right to have that question tried in the usual manner, if necessary, by a jury, and cannot be deposed for any alleged misfeasance or malfeasance in this summary manner.

A person by color of election may be an officer de facto, though indisputably ineligible, or though the office was not vacant, but there was an existing officer de jure at the time : Angell & Ames, Corp. § 287.

One who was elected to an office of a corporation by the body in which the power to elect is vested, but by a less number of that body than the charter authorizes, is an officer de facto : Baird v. Bank of Washington, 11 S. & R. 411.

No information in the nature of a quo warranto against Mr. Lavelle was ever filed and no proceedings commenced against him. He remained therefore de facto a member of the board, and his acts as such as heretofore shown were valid : Com. v. County Com'rs, 5 Rawle, 75 ; Com. v. Phila. Com'rs, 6 Whart. 481.

Section 4 of article 7 of the constitution repeals § 9 of the act of 1854: Houseman v. Com., 100 Pa. 222.

*John F. Whalen* and *Wm. A. Marr*, for appellee, cited: Act of April 22, 1863, P. L. 523 ; Act of May 8, 1854, § 9, P. L. 618; Bloomsburg School Directors' Ap., 121 Pa. 293 ; Kline Township School Board, 3 Pa. C. C. R. 546 ; Zulick v. Bowman, 42 Pa. 88 ; Genesee Township v. McDonald, 98 Pa. 450 ; Decision of Sup. of Pub. Instr., p. 31, 1892.

OPINION BY MR. JUSTICE DEAN, October 30, 1893:

The regularly elected members of the board of school directors of this district, on first Monday of June, 1893, were Kessler and Ginley, whose term expired June 1, 1894; Conroy and Nolan, June 1, 1895, Miller and Waltershied, June 1, 1896. It was the plain duty of these six men to meet and organize the board on the first Monday of June last. If they did not meet on that day, or on adjournment to a day subsequent within ten days for that purpose, then this duty was disregarded, their offices might be declared vacant by the court on proper proof, and the vacancies filled by appointees of the court.

The act of 22d of April, 1863, is peremptory in its injunction that the organization shall be had on the first Monday of June or within ten days thereafter, and it is held, upon failure to organize, the court of quarter sessions may, upon petition of not less than six taxable inhabitants of the district, declare their seats vacant and appoint others in their stead until the next annual election.

The petition in this case was presented on 5th of August, 1893, signed by more than the required number of taxable inhabitants. It averred: (1) The elected directors had failed to meet and organize as required by law, and had not so organized up to the date of filing the petition. (2) No treasurer had been chosen for the year, and the district was in danger of losing its state appropriation. (3) That two rival and hostile boards were claiming to be the regularly qualified school boards, and such was their antagonism and animosity, the interests of the district were greatly prejudiced thereby. On due notice by rule, both parties answered denying the material averments of petition, each claiming to be the regularly constituted board. A great mass of testimony was adduced before the court in support of the rival claims. This evidence tended to show two warring factions in the district, each represented about equally in the members elected. These directors elect seem to have met in sections of three, and then, under one pretence or another, to have declared the seats of the absent three vacant. Then each set of three filled the vacancies by appointment; in the one case of three, and in the other of two, new men acceptable to the appointing power. While this method probably made each board harmonious within itself, at least for a time,

it had the opposite effect on the affairs of the school district. There are in the district twenty-eight schools, and twelve to fifteen hundred school children. The interests of these children and those of the taxpayers, should have moved the members elect to unselfish, as well as discreet conduct in the performance of the duties of the important office to which they had been elected. A perusal of this evidence convinces us that not only did they fail in this measure of capability, but they also disregarded the law.

The directors elect did not organize within ten days after the first Monday of June, 1893, and this gave jurisdiction to the court of quarter sessions to declare their seats vacant and appoint others. The court did not determine their title to the office, it only determined whether those having an unquestioned title to the office had neglected to perform the official corporate act enjoined by law within the time fixed, which was necessary to their existence as a school board. The court on competent evidence ascertains the fact, then the vacancy follows, and the power of appointment by the court.

Three of the directors of the Nolan board declared the seats of three of the members elect vacant, and filled them with three others. They aver, this was because the three whose seats were filled, had, after due notice, neglected to attend two regular meetings of the board. While this part of the board was proceeding in this manner, Ginley, Conroy and Kessler, the excluded members, organized another board, and filled two vacancies for the same reason the others filled three. Each board went through the forms of organization, and each assumed authority in all matters relating to the government of the schools. That such a state of affairs might possibly occur under some mistaken view of the law, or misapprehension of duty, and both parties act in entire good faith, is possible. But the testimony here convinced the learned judge of the court below, that these parties, instead of honestly attempting organization, each set of three was trying to usurp all the power, and exclude the other three from any share of control. Each had previous knowledge of the meetings held by the other; at any one of these the whole six could have met and organized, had that been the purpose; and if they had done so, no question could have been raised as to the fact or legality of the

organization. But they purposely refrained from meeting together for such organization, because that would have included in the legal board the obnoxious members. There are many provisions in our statutes for such contingencies. The act of March 16, 1860, sec. 2, provides that, any township officer, failing to give the security required by the 1st section of the act within one month after his election, his office shall be declared vacant. Justices of the peace elect must file acceptance of office to which they are elected within a fixed time, or there is a vacancy. In all such cases, the nonperformance of the preliminary duty enjoined is a fact determinable by proof as in other cases, just as the fact of death or resignation creates the vacancy to be filled by appointment. The same power given to the board by section 8 of act of 1854,. to declare the seat of a member vacant for nonattendance at a regular meeting of the board, or to declare the seat of one who has assumed the duties of the office vacant on failure to attend two regular meetings, has been given the court in case of failure of the whole board to organize.

Nor does section 4, article VI, of the new constitution repeal section 9 of the act of 1854. The constitution provides that : "All officers shall hold their offices on the condition that they behave themselves well while in office, and shall be removed on conviction of misbehaviour in office, or of any infamous crime."

While the court, in the decree, uses the words "are hereby removed from office," the finding on which the decree was based is distinctly that the board had not been organized ; in other words, a vacancy existed, it was so declared, and then filled by appointment. They held no office in the board directed to be organized on the first Monday of June, 1893, because they willfully refused to organize that board within the plain meaning of the law. Hence there was a vacancy, just as in the case of the supervisor who refuses to file his bond, or of the justice of the peace who refuses to file his acceptance of the office. They were not removed from office in the school board ; by their willful disregard of the law they never had office in it. The constitution has no application to such a case. In the case of neither board was there any such organization as the law contemplates. To hold otherwise would lead to re-

sults in many cases wholly subversive of good order and stability in the control and management of the common schools. Four members of the board are necessary to the transaction of all business, except that of filling vacancies. If, as is not doubted, less than four can declare and fill vacancies, how many independent boards, under such mere pretence as the evidence here shows, may be organized in a district ? In this case there were but two ; but the fractions of faction are not necessarily limited to halves ; they may be thirds or even less, all claiming to be regularly constituted, and each attempting to control the school interests of the unfortunate district. This is not organization, but disorganization, and when the court below found as a fact that neither board had been legally organized its decree was right.

The decree is affirmed, and appeal dismissed at costs of appellants.

MR. JUSTICE MITCHELL, dissenting :

The act of May 8, 1854, sec. 8, provides that if any person elected a school director shall refuse to attend, etc., his seat in the board may be declared vacant, and another person appointed in his stead, by the directors present. Section 9 then enacts that " If *all* the members of any board of directors shall refuse or neglect " to perform any of their duties etc. the court of quarter sessions may declare their seats vacant. This is a highly penal statute by which officers duly elected by the people are summarily displaced, and others put in their stead. All such authority must be strictly pursued. The meaning of the act is plain. Section 8 provides for individual cases, section 9 for the dereliction of the whole board. It operates only when *all* the members refuse or neglect to perform their duties, a case which would not be remediable under the previous section.

In the present case there was no neglect or refusal of all the members. On the contrary three of the persons named in the petition on which these proceedings are founded as duly constituted members of the board, met within the time appointed by law and effected an organization. Two other persons, whose title to office was disputed, met with them. On the other hand two of the duly elected members, with one other whose seat was in litigation, also met, separately, within the time fixed by law, and effected a different organization.

Which of these organizations, if either, was the legal and valid one, was a serious question, but it manifestly was not the case provided for by section 9 of the act of 1854. It was the ordinary case of two parties claiming the same office, each under color of title, and the remedy was by the ordinary and regular process of quo warranto. No doubt the situation was highly inconvenient and injurious to the interests of the school district, but that affords no justification for the perversion of a summary remedy to a case to which it does not legally apply. Hard cases are said to make bad law, and this appears to be one of them. The result reached is no doubt convenient, and it may perchance produce justice, but it is certainly not justice judicially administered. I am of opinion that upon the admitted facts there was no case within the statute, and that the whole proceeding is void for want of jurisdiction.