## Jefferson Township School District's Directors.

*School law—Directors—Removal—Misconduct—Consolidation of schools—Constitutional law—Act of May 18, 1911.*

1. Sections 217, 218 and 219 of the Act of May 18, 1911, P. L. 309, relating to the removal of school directors, do not violate section 4, article 6, of the Constitution, relating to the removal of public officers, and the Courts of Common Pleas have power, in proper cases, to remove school directors from office.

2. The office of school director is not a constitutional office, and does not, therefore, fall within the constitutional provision.

3. Where the school directors of a township and those of a borough enter into an agreement for the establishment of a consolidated school, to be jointly supported by the respective districts, and such agreement is proper in terms and approved by the county and State school authorities, the agreement is binding upon both districts, and if the directors of one of the districts refuse to carry it into effect, they may be removed from office.

4. In such case, the fact that at the date of the agreement there was a vacancy in the directorship of one of the districts, so that the contract was authorized by four instead of five directors, does not invalidate the agreement.

Petition and rule to remove school directors. C. P. Greene Co., June T., 1922, No. 19.

*C. W. Waychoff* and *Roy J. Waychoff*, for petitioners.

*James J. Purman* and *Joseph Patton*, for respondents.

RAY, P. J., Aug. 29, 1922.—This is a proceeding to secure the removal of the Board of School Directors of the School District of the Township of Jefferson, Greene County, Pennsylvania.

On May 17, 1922, the petition of ten resident taxpayers of the said school district was presented to the court, wherein they set forth that in several respects the said board of school directors had failed and neglected to perform their official duties. In response to their prayer, the court granted a rule on the five members of said school board, to wit, Joseph W. Stewart, C. S. Sprowls, John Riggle, Emma Love and Charles Stilwell, to show cause why they should not be removed from office, and made the same returnable on May 29, 1922. To this petition and rule the respondents filed an answer, denying the material allegations in the petition charging neglect or refusal to perform their official duties. This was followed with a replication, filed June 16, 1922, by the petitioners. A hearing was had, June 27 and 28, 1922, before the court, at which time evidence was taken on behalf both of the petitioners and the respondents.

From the petition and answer and the evidence submitted on the hearing the following facts are found:

1. That the School Board of the said School District of Jefferson Township is composed at present of the five respondents heretofore named.

2. That three members of said school board—Joseph W. Stewart, Emma Love and C. S. Sprowls—were elected at the municipal election of 1921, and took their seats the first Monday of December, 1921; that the said John Riggle was appointed to fill a vacancy on said board caused by the neglect of D. D. Thistlethwaite to qualify, and took his seat Jan. 2, 1922; and that Charles Stilwell was elected a member of said board prior to the election of 1921, and was a member of said school board during the school year of 1920-1921.

3. That for some time prior to the first Monday of December, 1921, the School Board of the said School District of Jefferson Township was composed of Charles Stilwell, James Pratt, R. J. Strickler and Daniel Eaton, there being at that time a vacancy on said board caused by the resignation and retirement of Robert Hill.

Jefferson Township School District's Directors.

4. That on Oct. 26, 1921, an agreement was entered into in writing, and duly executed, by and between the School Board of the School District of Jefferson Township, composed of the four members above named, party of the one part, and the School Board of the School District of the Borough of Jefferson, the said county and State, composed of five members, party of the other part, the said two school districts adjoining each other, by the terms and conditions of which contract a joint, consolidated, elementary public school was established, in pursuance of and in compliance with article XVIII, §§ 1801 to 1808, inclusive, of the Act of May 18, 1911, P. L. 309-461.

5. That the said agreement of consolidation of the said elementary schools, as set out in the immediately preceding paragraph, reads as follows:

### DUPLICATE AGREEMENT.

Made October 26, 1921, between the School District of Jefferson Township, Greene County, Pennsylvania, party of the first part, and the School District of Jefferson Borough, Greene County, Pennsylvania, party of the second part.

Whereas, first party has purchased what is known as the old Monongahela College property, situated in Jefferson Township, Greene County, Pennsylvania, and after approval of location and plans by the Pennsylvania Department of Public Instruction, has improved same in an up-to-date manner, at a cost of Sixty Thousand ($60,000.00) Dollars; and

Whereas, it is the desire of above parties to establish and maintain a joint consolidated elementary public school, using the first floor of said building.

Now, this agreement witnesseth: That said parties hereby agree to establish and maintain said joint consolidated elementary public school under and subject to the following express conditions and stipulations:

1. The real estate title shall remain in first party.

2. School supplies of the first class, as specified in Section 706 of the School Law of Pennsylvania, approved May 18, 1911, P. L. 309, shall be furnished by and be the property of the School District of Jefferson Township. Provided, that if any supplies of the first class now belonging to the School District of Jefferson Borough be used in the equipment of said joint consolidated elementary public school, such supplies shall remain the property of the School District of Jefferson Borough while being so used. School supplies of the second class, as specified in said Section 706, shall be furnished by the joint Board, as provided in said Act of Assembly, and be paid for by the joint Treasurer. All text-books shall be chosen, adopted and paid for by the joint Board.

3. The School District of Jefferson Township, first party, agrees to furnish and equip immediately the said first floor of said property with supplies of the first class, mentioned above, for the proper operation of said joint consolidated elementary public school.

4. The School District of Jefferson Township, first party, agrees to, at all times, keep the building in proper repair for school purposes. Provided that incidental repairs to the first floor of said building are to be paid for by the joint Board.

5. The School District of Jefferson Township, first party, agrees to consolidate three schools of said School District, namely, West End School, Price School and Laurel Run School; and the School District of Jefferson Borough, second party, agrees to consolidate all of the elementary schools of its District.

6. All maintenance expenses of said first floor of said building shall be paid by both parties in proportion to the pupils enrolled by each School District, i. e., by the School District of Jefferson Township, all elementary pupils in what has heretofore been the West End School, Price School and Laurel Run School and by the School District of Jefferson Borough, all elementary pupils in said Borough.

7. Each party to this Agreement agrees to pay to the joint Treasurer of said joint consolidated elementary public school, so above created, the necessary funds for the maintenance of said school, in such sums and at such times as shall be needed for the maintenance and operation of said school, such sums to be payable by both parties on demand of said joint Treasurer; provided that at no time shall the sums so paid by either party exceed the probable amount of the total annual share of said party.

8. In as much as the total cost of the above-mentioned real estate and the improvements upon it amounts to Sixty Thousand ($60,000.00) Dollars, and in as much as the joint consolidated elementary public school above provided for will

2 D. & C.

occupy the first floor of the said property and improvements, costing approximately Twenty Thousand ($20,000.00) Dollars, it is agreed by the parties hereto that six per cent. interest on said Twenty Thousand ($20,000.00) Dollars or Twelve Hundred ($1200.00) Dollars per year shall be added to the total maintenance cost of said joint consolidated elementary public school, to be paid to said joint Treasurer by the parties hereto, in the same proportion as other maintenance expenses are paid as provided in Paragraph 6 hereof, which said Twelve Hundred ($1200.00) Dollars shall, each year, be paid by said joint Treasurer to said School District of Jefferson Township, Greene County, Pennsylvania.

In Witness Whereof, above parties have caused this Agreement to be signed by their proper officers.

6. That the said contract of Oct. 26, 1921, was submitted to the County Superintendent of Schools of Greene County, Pennsylvania, and to the State Department of Public Instruction of the State of Pennsylvania, and fully approved by both prior to its adoption and ratification by the said two school boards.

7. That the said agreement was unanimously ratified and approved by the two school boards of said two school districts, as then constituted—four members in the one and five in the other—thereby establishing a joint, elementary public school, and the same went into operation under and by virtue of that agreement.

8. That the respondents, soon after entering upon their official duties, as heretofore found, and subsequent to Jan. 2, 1922, entered upon a course of systematic refusal and neglect to carry out in good faith the said agreement of Oct. 26, 1921, to which agreement their predecessors in office were one of the parties, and thereby seeking to render said agreement ineffective, null and void, and claiming that the act of assembly under which the consolidated school had been created was unconstitutional.

9. That the said respondents, although now seeking to relieve themselves and the School District of Jefferson Township from all liability and responsibility under the contract of Oct. 26, 1921, on Jan. 2, 1922, in pursuance of the said joint agreement, appointed a committee, composed of Joseph W. Stewart and C. S. Sprowls, two of their number, to co-operate with a like committee of the School District of Jefferson Borough to manage and control the said joint, consolidated, elementary public school.

10. That the said respondents, although now seeking to annul the contract of consolidation, permitted the children of two of the three schools of said township embraced in the consolidation to attend the said joint school, thereby obtaining and receiving the benefits of the said school.

11. That the said respondents neglected and refused to properly seat the elementary rooms in the building in which, under the agreement, said consolidated schools were to be and were carried on, and also neglected and refused to properly seat the high school rooms of the high school established in the same building by the Board of School Directors of the said School District of Jefferson Township; and this neglect and refusal is shown by the fact that their predecessors in office had ordered new seats for such purposes to the amount of $800, and that upon receipt of said seats, shortly after assuming their official duties, they stored them in the West End School House, near said elementary and high school building, and on request of the principals of said high and elementary schools, made to the president of the School Board of Jefferson Township, that said seats be used for the purpose for which they were purchased, he replied: "Your request is laid on the table indefinitely."

12. That the property in which these schools—high school and the joint elementary school—were housed and carried on is in the Township of Jeffer-

son and is the property of the Jefferson Township School District, and was and is under the control of the school board of said district.

13. That the respondents permitted the said school buildings during the school year of 1921-1922 to become in a very unsanitary condition by reason of failing to give proper care and attention to the toilet system installed in said building, thereby gravely endangering the health, if not the lives, of the pupils attending the said schools.

14. That the respondents during the school year of 1921-1922 did not visit the various schools of their district and make report of their visits to the board, as required by section 405 of the School Code of 1911.

15. That the treasurer of said joint, consolidated school, July 2, 1922, in accordance with the agreement of Oct. 26, 1921, notified the School Board of Jefferson Township to pay the sum of $500 into the joint treasury of the said school, which payment has never been made, nor has any payment ever been made to the said treasurer for the purpose of conducting and carrying on the said elementary school by the School District of Jefferson Township.

16. That the respondents were duly notified by Hallie Crayne, secretary of the joint board, of a joint meeting to be held June 24, 1922, at 2 o'clock P. M., to attend to the general business of said board; that only one of the respondents attended that meeting, and there being lack of a quorum, as provided by law, no business could be transacted by the said joint board looking to the opening and continuing of the said joint school.

17. That three of the said respondents, Stewart, Sprowls and Riggle, plainly evidenced a determination, as appears by their evidence on the hearing, not to support the said joint school and not to carry out the contract of Oct. 26, 1921, entered into by their predecessors in office, and one of the three expressed his intention to resign his office rather than carry out the said contract.

18. That the respondents paid the wages of Mary Davis, one of the teachers in said joint school, for the full term, in accordance with the written contract entered into between her and the School Board of Jefferson Township prior to the agreement of Oct. 26, 1921, to teach one of the schools that was closed by reason of the said contract of consolidation.

19. That during the summer of 1921 the Jefferson Township School Board entered into a written contract with the two teachers employed, one to teach the West End School and the other the Laurel Run School, and the borough board entered into contracts with two teachers to teach the two elementary schools of said borough, and that on or about the time of the agreement of Oct. 26, 1921, the joint board had a verbal understanding or agreement with said four teachers that they would teach in the consolidated school under the previously made contracts. These four teachers began teaching the school year of 1921-1922, each in a separate school building, but, on the consolidation of said schools, they went with their schools and completed their teaching for the said year in the consolidated school.

20. That each of the said two school districts, parties to the contract of consolidation, has a population of less than 5000, and is, therefore, a school district of the fourth class.

21. That each of the said two contracting school districts is a body corporate, has the right to sue and be sued in its corporate name, and is clothed with all the powers conferred by law on school districts of the fourth class.

22. That each of said two school districts being of the fourth class, its affairs are to be administered by a board of five members elected at large, and whose term of office shall begin on the first Monday of December following their election, and before entering upon the duties of their office must take

2 D. & C.

and subscribe to an oath or affirmation in the form prescribed by article VII of the Act of May 18, 1911, P. L. 309-461.

23. That by the contract of consolidation three schools of Jefferson Township—West End School, Price School and Laurel Run School—were consolidated with the two elementary schools of the Jefferson Borough School District, but the Price School has never been closed, notwithstanding the contract of consolidation, and had an enrollment of twenty-five pupils during the last school year.

24. That at No. 78, March Term, 1922, in the Court of Common Pleas of Greene County, Pa., the Commonwealth ex rel. O. R. Hughes, District Attorney for Greene County, Pa., instituted a proceeding of mandamus against the said respondents, as a Board of School Directors of Jefferson Township School District, to compel them to comply with the terms of the contract of Oct. 26, 1921. And to the alternative writ of mandamus issued thereon the said respondents, except Charles Stilwell, made full and responsive answer, which proceeding is pending and undetermined in said court.

25. That immediately preceding the taking of testimony in this case four additional resident taxpayers of the said School District of Jefferson Township presented their petition to the court, asking to be made parties to the said petition. At the same time three of the ten petitioners for the pending rule presented petitions to the court to permit them to withdraw their names from said petition, and to discharge the rule granted and dismiss the petition, severally stating that they signed the petition under a misapprehension of the facts. The court allowed the said petitions to be filed, but refused to grant the requests therein preferred.

### Conclusions of law.

1. That the five respondents, Joseph W. Stewart, Charles Stilwell, C. S. Sprowls, John Riggle and Emma Love, constituting the School Board of Jefferson Township School District, have refused or neglected to perform important duties made mandatory upon them by law to perform.

2. That the prayers of the petitioners, James M. Roberts, F. F. Randolph and W. F. Randolph, three of the ten petitioners for the pending rule to withdraw from the said original petition, under the facts and circumstances, should not be allowed.

3. That sections 217, 218 and 219 of the Act of May 18, 1911, P. L. 309-461, commonly known as the School Code, are not unconstitutional and are not in conflict with article VI, § 4, of the Constitution of the State of Pennsylvania, and that Courts of Common Pleas, in proper cases, are clothed with power and have jurisdiction to remove school directors from their offices.

4. That the agreement of Oct. 26, 1921, is a valid and subsisting agreement, entered into in substantial compliance with sections 1801 to 1808, inclusive, of the Act of Assembly of May 18, 1911, known as the School Code, and is enforceable, both in law and in equity, against the School District of Jefferson Township, regardless of the refusal of the school board of said township, as at present organized, to recognize its validity.

5. That the agreement of Oct. 26, 1921, is not invalidated by reason of the fact that at the time it was entered into there was one vacancy on the School Board of the School District of Jefferson Township, reducing the number of the membership to four.

6. The said consolidated school having been established by the joint action of the school boards of the two said school districts, and, in pursuance thereof, the said consolidated school having been put into actual operation, it became the official duty of the respondents, upon their accession to office, to

assist in good faith, and to co-operate with, the School Board of the Borough of Jefferson to carry on said consolidated school successfully until it should be legally discontinued, either in the way and manner provided by section 1808 of the School Code or by other proper legal procedure.

## Discussion.

Our findings of fact and conclusions of law based thereon render unnecessary any lengthy discussion of the questions passed upon. One of the principal contentions of the respondents, and the one on which they lay great stress, is that sections 217, 218 and 219 of the Act of May 18, 1911, P. L. 309-461, commonly called the School Code, under which this proceeding was instituted, is unconstitutional. They contend that they are in violation of section 4, art. VI, of the Constitution of Pennsylvania, and that they are, therefore, void, and that the court has no jurisdiction in the premises. The alleged violated section of the Constitution reads as follows:

"All officers shall hold their offices on the condition that they behave themselves well while in office, and shall be removed on conviction of misbehavior in office or of any infamous crime. Appointed officers, other than judges of the courts of record and the superintendent of public instruction, may be removed at the pleasure of the power by which they shall have been appointed. All officers elected by the people, except Governor, Lieutenant-Governor, members of the general assembly and judges of the courts of record learned in the law, shall be removed by the Governor for reasonable cause, after due notice and full hearing, on the address of two-thirds of the Senate."

It will be observed that the last sentence of this section of the Constitution declares that "all officers elected by the people," with certain exceptions therein enumerated, "shall be removed by the Governor for reasonable cause, after due notice and full hearing, on the address of two-thirds of the Senate." It is with this declaration of the Constitution that the respondents strenuously maintain the sections of the School Code of 1911, under which this proceeding is being carried on, is in direct conflict. If this interpretation be correct, it follows, as a logical sequence, that the court has no jurisdiction in the premises and that the proceeding should be dismissed. To this interpretation, however, after consideration, we are unable to yield assent. Certainly it was not the intention of the framers of the Constitution that school directors, borough councilmen and many other petty municipal officers elected by the people should be subject to removal from office only by the Governor of the State, after due notice and full hearing, on the address of two-thirds of the Senate. We cannot conceive for a moment that it was the purpose of the makers of the Constitution of 1874 to impose such burdens, duties and responsibilities upon the Governor and Senate. Correctly interpreted, as it seems to us, this section of the Constitution clothes the Governor and the Senate with the power and duty to remove all constitutional officers elected by the people, except such officers as are therein excepted, for reasonable cause. The office of school director, as we understand it, is not a constitutional office, and does not, therefore, fall within the purview of this section of the Constitution. The office of school director is created by constitutional statute, and an incumbent of the said office may be removed therefrom in pursuance of a constitutional statute enacted for that purpose, by which is meant such a statute as the legislature, under the Constitution, has the power to enact. In our opinion, section 217 of the School Code of 1911, which enumerates the reasons for which school directors may be removed, and provides the proceeding for such removal, is a constitutional statute.

2 D. & C.

In Butler Township School District Case, 158 Pa. 159, the Supreme Court say: "Nor does section 4, art. VI, of the new Constitution, repeal section 9 of the Act of 1854. The Constitution provides that: 'All officers shall hold their offices on the condition that they behave themselves well while in office, and shall be removed on conviction of misbehavior in office or any infamous crime.' "

In Com. v. Sanderson, 11 Pa. C. C. Reps. 593, it is held:

"The Select Council of the City of Scranton has power to vacate the seat of one of its members whom the committee of investigation has found guilty of soliciting a bribe for his vote.

"The Municipal Corporation Act of May 23, 1874, which declares that each branch of councils shall have power to vacate the seat of any of its members for misbehavior, neglect of duty or misdemeanor, is not inconsistent with section 4, art. VI, of the Constitution of 1874.

"It seems that the City of Scranton, in accepting the Constitution of 1874, did not surrender the rights conferred upon it by the Act of April 23, 1866, as to the removal of councilmen from office."

In Kline Township School Board, 3 Pa. C. C. Reps. 546, the court holds: "If a public school board fail to organize under the Act of May 8, 1854, § 12, because none of its members can obtain a majority of its votes for president, it is such neglect of duty as will justify the court to declare their seats vacant and to appoint others in their stead."

In Com. v. Reid, 265 Pa. 328, it is held: "A constitutional officer can only be removed in the manner and for the causes prescribed by the Constitution, and a legislative officer only in the manner and for the causes provided by the Constitution or a constitutional statute."

The Supreme Court, in Bloomsburg School Directors' Appeal, 121 Pa. 293, hold: "When a board of school directors, by reason of being unable to agree upon the amount of salary to be paid, have failed to appoint a necessary teacher, it is such neglect of duty as will authorize the Court of Quarter Sessions to declare their seats vacant and to appoint others in their stead."

It appears from the evidence that not only the county superintendent of schools of this county, but that the State Department of Public Instruction also examined and approved the contract of Oct. 26, 1921, prior to its unanimous adoption and approval by the school directors of the two contracting school districts. Thereupon the joint, consolidated, elementary public school was put in operation by the joint contracting parties, and was carried on for the remainder of the school year 1921-1922 under the instruction of four teachers, thus becoming a part of the public school system of the State of Pennsylvania. Neither party to the contract thereafter, of its own motion, could declare, for any reason, the contract of consolidation void and of no effect, and thereupon proceed to disregard it and seek to abandon the said school. It was the duty of both parties to give to this school of their joint creation earnest, faithful, intelligent support until it should be discontinued, either by their joint action in the way provided by section 1808 of the School Code of 1911, or in some other legal way.

In our opinion, such school directors of these two school districts as failed to respond to a legal notice to meet at a legal time, for the reorganization of this joint school for the school year 1922-1923, either refused or neglected, or both, to perform an important official duty mandatory on them under the law. On the hearing of this case it was made painfully manifest that an unfortunate condition has grown out of this controversy; a condition which we most sincerely regret, as we do not doubt many citizens of these two school

districts likewise do, as well as many others residing without their borders. Pride of opinion should never outweigh our patriotic desire, whether we be school directors or otherwise, to promote the very best interests of the boys and girls of our public schools. These schools are the people's colleges, and upon their success depends, in high degree, the perpetuity of the Republic. In pursuance of the foregoing views, the following order is made:

And now, Aug. 29, 1922, upon due consideration of the petition, answer, evidence taken before the court and the arguments and briefs of counsel, the said rule is made absolute, and it is ordered and decreed that Joseph W. Stewart, C. S. Sprowls, John Riggle, Charles Stilwell and Emma Love, constituting the legal Board of School Directors of the School District of Jefferson Township, Greene County, Pennsylvania, be and they hereby are removed from said office and are enjoined, they and each of them, from any further exercise of the duties thereof, and are hereby directed, without undue delay, to turn over to their successors in said office, by this decree appointed, any and all books, papers, records, moneys, and all other property whatsoever in their custody or control, or in the custody or control of either of them, belonging to the said school district, and to pay the costs of this proceeding; and, further, it is hereby ordered and decreed that the following resident taxpayers of the said School District of Jefferson Township be and they are hereby appointed school directors of said school district to fill the vacancies therein existing: Tressa Horner, to fill the unexpired term of Joseph W. Stewart; R. M. Gwynne, to fill the unexpired term of C. S. Sprowls; R. L. Denny, to fill the unexpired term of John Riggle; Elva Staggers, to fill the unexpired term of Charles Stilwell; and Frank F. Randolph, to fill the unexpired term of Emma Love, the said appointees to qualify according to law.

From S. M. Williamson, Waynesburg, Pa.