# Geiser Manufacturing Company, Appellant, *v.* Frankford Township.

*Evidence—Writings—Minutes of township supervisors—Parol evidence.*

1. The minutes of township supervisors duly entered in the minute book of the township clerk and allowed to remain without question for a considerable period of time, are conclusive of the fact that a meeting therein described was held, and cannot, in the absence of any allegation or proof of fraud, be contradicted by parol evidence on the trial of a collateral issue.

*Practice, C. P.—Trial—Withdrawal of testimony.*

2. It is reversible error for a trial judge after having excluded certain testimony and directed the jury to disregard it, to refer to such testimony again in answering a point.

Argued March 8, 1909. Appeal, No. 2, March T., 1909, by plaintiff, from judgment of C. P. Cumberland Co., Feb. T., 1905, No. 175, on verdict for defendant in case of The Geiser Manufacturing Company v. Frankford Township. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Assumpsit to recover for value of a traction engine. See 34 Pa. Superior Ct. 146. Before SADLER, P. J.

At the trial when G. H. Fry was on the stand the following offer was made:

It is intended to prove by the witness on the stand that the minutes as set forth on the pages named do not truly represent what occurred at any meeting on September 1, 1904. It is intended to prove that there never was such a meeting as set forth by these minutes; for the purpose of contradicting these minutes.

Mr. Biddle: Objected to. That it having been admitted that the book in question is the regular Township Book, kept by the township clerk, in accordance with the act of assembly, it is the best evidence of what took place, and that in the absence of an allegation of fraud or collusion in making it up, no testimony to contradict it is admissible; the proposed evidence is incompetent for the purpose offered.

## DISCUSSION.

Mr. Sadler: The defendant proposes to prove by the witness on the stand that the minute of September 1, 1904, which purports to be a minute passed at a meeting held by the supervisors of the said township, and recorded in the Minute Book, does not show the action of the supervisors on that date, or on any other date, and what purports to be the record, is not, as a matter of fact, truly recorded.

Mr. Biddle: Your purpose?

Mr. Sadler: For the purpose of showing that no such action was taken on that date.

Mr. Biddle: We renew our objections.

The Court: Objections overruled; plaintiff excepts and the bill is sealed. [3]

"A. Yes; two years ago."

Mr. Berg: "Q. A few weeks before the other trial? A. Yes. Q. That is the first time that you knew these minutes were in the book? A. Yes; that is the first I saw them. Q. That is the first you knew of them? A. Yes."

Fourth assignment. The learned court below erred in admitting over plaintiff's objection, the evidence of J. E. Mininch to contradict the record of the Township Minute Book, said offer, ruling and evidence being as follows:

When J. E. Mininch was on the stand Township Book No. 2, pages 2–2 was shown witness.

It is intended to prove by the witness on the stand that in 1904 he was township clerk; that he put these minutes on the Township Book at the request of one of the then supervisors, who told him that he had received the same from his attorney, and wanted these minutes put on the book; further, that these

minutes had never been seen or read or heard read by Mr. Fry, one of the then supervisors, for the purpose of showing that they do not represent a meeting of the township supervisors.

Mr. Biddle: Objected to.

That it is an effort to contradict a record by parol evidence, without any allegation of fraud or collusion in the entry of minutes, it being admitted that there was a meeting of the supervisors at the residence of the witness at or about the time the minute was entered in the book; the evidence is incompetent for the purpose offered, or for any purpose.

The Court: The witness may state the circumstances under which the minute was made, and when it was made, if he can; he may also state that it was never read or heard read by Fry, or not entered by his direction, or with his assent, if he can; the plaintiff excepts and the bill is sealed. [4]

Plaintiff presented these points:

4. Until the time for the payment of the engine arrived, the supervisors never made any complaint as to the fairness of the transaction, and never to the time of the trial, of the right of Mentzer to hold the new engine in ratification of their contract. *Answer:* Affirmed. There certainly is no evidence of any dissatisfaction, unless it would appear from the interview between Fry and young Kutz. We, however, affirm this point without qualification. [2]

8. There is sufficient evidence in this case to warrant the jury in treating the order of the supervisors for the engine and the acceptance of it by delivering it to Mentzer as a joint ratification of their former consultations and deliberations so as to make the township liable for their action. *Answer:* Refused as stated; we leave this for your determination. [8]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* among others were (2, 8) above instructions, quoting them; (3, 4) rulings on evidence, quoting the bill of exceptions, and (5) that the court erred in not instructing the jury as to the character of the evidence of a record, such as the Township Minute Book, and the quality of parol evidence that is necessary to contradict such a record.

*E. M. Biddle, Jr.,* with him *C. C. Bashore,* for appellant.— The admission of incompetent evidence even if accompanied by instructions to the jury to disregard it as entitled to no weight is reversible error. "Impressions once made are not easily erased:" Shaeffer v. Kreitzer, 6 Binn. 430; R. R. Co. v. Baxter, 32 Vt. 805; Fisher v. Penna. Co., 34 Pa. Superior Ct. 500.

Admission of parol evidence to contradict township records was error: Weir v. State, 96 Ind. 311; State v. Main, 69 Conn. 123 (37 Atl. Repr. 80); People v. Madison County, 125 Ill. 334; Morrison v. City of Lawrence, 98 Mass. 219; Andrews v. Boylston, 110 Mass. 214; Halleck v. Boylston, 117 Mass. 469; Com. v. King, 17 Pa. Dist. Rep. 785; Avoca Boro. v. St. Ry. Co., 7 Kulp, 470; Roland v. School Dist., 161 Pa. 102; Whitehead v. School Dist., 145 Pa. 418; McCrea v. School Dist., 145 Pa. 550.

*S. B. Sadler,* with him *Herman Berg, Jr.,* for appellee.— Where incompetent evidence is withdrawn before argument it does not cast such a taint upon the relevant testimony as will justify a reversal of the judgment: Sidney School Furniture Co. v. School Dist., 158 Pa. 35; Beard v. Heck, 13 Pa. Superior Ct. 390; Com. v. Crossmire, 156 Pa. 304.

Parol evidence was admissible to contradict the minutes: Altoona City v. Bowman, 171 Pa. 307; Gearhart v. Dixon, 1 Pa. 224; Sidney School Furniture Co. v. School Dist., 158 Pa. 35; Thompson v. Chase, 2 Grant, 367; Thorne v. Ins. Co., 80 Pa. 15; Poindexter v. McDowell, 84 S. W. Repr. 1133; Hopkins v. Danby School Dist., 27 Vt. 281; Miller v. Fichthorn, 31 Pa. 252; Johnson v. Smith, 165 Pa. 195; McDermott v. Ins. Co., 3 S. & R. 604.

OPINION BY HEAD, J., July 14, 1909:

When this case was formerly before this court its material facts were fully reviewed by our Brother ORLADY. We see no necessity to restate them here. The plaintiff in support of its claim had offered, inter alia, the regular minute book in which the official actions of the supervisors were recorded by the township clerk in accordance with the statutory requirement.

To overcome the effect of this record evidence, the defendant placed upon the witness stand one of the two supervisors at the time the minutes were made and offered to prove the following: "It is intended to prove by the witness on the stand that the minutes as set forth on the pages named do not truly represent what occurred at any meeting on September 1, 1904. It is intended to prove that there never was such a meeting as set forth by these minutes; for the purpose of contradicting these minutes." The objection being taken that the minutes were the best evidence of what had transpired, and that in the absence of any allegation of fraud or collusion in making them up, it was not competent to contradict them by parol testimony; the defendant then supplemented the offer thus: "The defendant proposes to prove that what purports to be a minute . . . . recorded in the minute book, does not show the action of the supervisors on that day, or on any other day and what purports to be the record is not as a matter of fact truly recorded, for the purpose of showing that no such action was taken on that day." The objection was then overruled, the offer admitted, and a bill of exceptions sealed.

By the Act of April 15, 1834, P. L. 537 it is provided "that the town clerk in each township shall be clerk to the supervisors of the same township, and as such shall keep a record of the proceedings of said officers, . . . . and the book or books, so to be provided by the town clerk, shall be kept by him and shall be open for the inspection of any person who may have occasion to search therein." The evils which flow from a failure to obey this statute, thus leaving the future investigation of important township affairs to be conducted only in the light of the uncertain memories of former officials, have been more than once pointed out by this court. It is not denied that the book which was produced and offered in evidence was the regular minute book of the supervisors of Frankford township. It was in the custody of the proper officer, and the minutes there appearing had been recorded and duly certified by him. They covered two separate meetings of the board, one on September 1, 1904, relating particularly to the purchase of the new engine, the subject-matter of the present dispute,

and the subsequent meeting of September 17, from which it appears that on that day the minutes of the previous meeting were read and approved and other important business of the township transacted. These minutes have remained on the record without any attempt on the part of the supervisors, or either of them, to correct, amend, or otherwise change them. Under such circumstances, what was their true· evidential value? The act of 1834, already quoted, declares they shall constitute the official record, and no reason is apparent to us why they should not stand in the same category as the minutes of the proceedings of a school board, which likewise are required to be kept under the provisions of an act of assembly.

In Whitehead v. School District, 145 Pa. 418, where the question was the regularity of the discharge of a school teacher, Mr. Justice CLARK said: "But the action of the board in effecting the dismissal of a teacher must be set forth upon the minutes as required by the statute. The minutes are therefore the best evidence of the teacher's dismissal, and are conclusive, unless the board may be shown to have acted corruptly or in bad faith, and to have clearly abused its powers. The admission of evidence on the part of the defendant as to the circumstances of cruelty alleged, was therefore erroneous." This language was cited with approval in McCrea v. School District, 145 Pa. 550.

The general rule throughout the several states of the union is thus declared in 24 Am. & Eng. Ency. of Law (2d ed.), 197: "The doctrine that such records (other than legislative and judicial) are conclusive, receives much support from a large number of cases in which it is laid down that they cannot be contradicted by parol or other extrinsic evidence, while there are very few cases in which it has been held admissible to contradict directly such records by evidence of this character. That such records may be aided or explained by parol or other extrinsic evidence is undisputed."

In the printed brief of the learned counsel for appellant we find the following excerpts from three of the many cases cited in the Encyclopedia in support of the rule stated: "In a collateral inquiry, a record of the board of county commissioners ·

showing an act done on a day certain, cannot be questioned by proof that on that day the board was not in session:" Weir v. State, 96 Ind. 311. "The record of a public board cannot be collaterally attacked by the oral impeaching testimony of its secretary:" State v. Main, 69 Conn. 123. To the same effect are People v. Madison County, 125 Ill. 334; Morrison v. City of Lawrence, 98 Mass. 219, and others.

We do not by the citation of these authorities intend to carry the doctrine a step beyond the limits defined in White-head v. School District, 145 Pa. 418. Fraud vitiates everything it touches, and it would be unreasonable to hold that any record possesses such a character that no means are left by which it may be made to speak the truth where the finger of fraud has written falsehood into it. In the present case the minutes were prepared by counsel for at least one of the supervisors in accordance with the facts as stated by him. They were sent to the clerk of the board. The supervisors met at his house. After the meeting the clerk transcribed the minutes into the book, and in due course those of the following meeting certifying to their formal approval. He does not allege that he was corruptly induced to do this by the plaintiff, or by anybody else; nor is it alleged, much less proven, that the plaintiff had anything whatever to do with the preparation or recording of these minutes. The most that is said, by way of attack upon the minutes, is that one of the supervisors declined to look at them or read them. There is no evidence that he protested against the recording of them, or alleged that they untruly set forth what the supervisors had done. Nor did the supervisors, at any time after this dispute had arisen, take any steps to correct, in a proper way, the mistake, if any, in the history of their transaction as it had been officially recorded.

Under these circumstances, to permit the township officers to come into court, on the trial of a collateral issue, and swear away the record which had been officially made and permitted to remain without question for a considerable period of time, would seem to us to be a practical nullification of the provisions of the act of 1834 requiring such record to be kept. In such

event, the record would be worse than useless, because in many cases one who relied on it might find himself in a worse position than if it had never been made. We think the learned trial judge should have explained to the jury that these minutes constituted the official record of the township's acts; that such record was kept in obedience to a positive legislative enactment, the wisdom of which is manifest, and that it was conclusive, in a collateral proceeding, as to what had transpired unless it could be successfully attacked and overthrown by showing that it was a record of fraud and collusion. The third, fourth and fifth assignments of error are sustained.

When one of the supervisors was on the witness stand, the court permitted him to testify to a conversation he had with a son of the agent of the plaintiff as to the extent of the damage which had been done to the engine of Mentzer when it went through the township bridge. This testimony was without doubt damaging to the plaintiff's case. It was admitted over the objection of the plaintiff's counsel. It was afterwards excluded and the jury directed to disregard it. In its fourth point, the plaintiff asked the court to say to the jury, "Until the time for the payment of the engine arrived, the supervisors never made any complaint as to the fairness of the transaction, and, never to the time of the trial, of the right of Mentzer to hold the new engine in ratification of their contract." The court answered, "Affirmed. There certainly is no evidence of dissatisfaction unless it would appear from the interview between Fry and young Kutz. (This being, as we understand, the testimony which was stricken out.) We, however, affirm this point without qualification." With the record in this condition, we do not feel able to say that the jury may not have been prejudiced against the plaintiff's case by the admission of the incompetent evidence. After evidence has been improperly received, it is always a grave question whether striking it out and directing the jury to disregard it, completely obliterates the effect of it. Why the court after having thus undertaken to repair the error in admitting the testimony, saw fit to refer to the conversation in the answer to the point, we are unable to say. We think the point should have been

affirmed without any qualification, and under the circumstances stated, we feel obliged to sustain the second assignment.

By its eighth point (eighth assignment), the court was asked to instruct the jury that "there is sufficient evidence in this case to warrant the jury in treating the order of the supervisors for the engine, and the acceptance of it by delivering it to Mentzer, as a joint ratification of their former consultations and deliberations, so as to make the township liable for their action." The court answered: "Refused as stated; we leave this for your determination." On the former appeal this court had stated, in the exact language of the point, its opinion that there was sufficient evidence to carry the case to the jury. This was intended, of course, as a direction to guide the court below in the new trial which was the result of that appeal. The learned court, in submitting the case to the jury, obeyed the direction thus given. We are not prepared to say, however, that any reversible error was committed in declining to affirm the point as a proper instruction to the jury, for the reason that, if affirmed as presented, without qualification or explanation, the jury might have been led to think that there was no other course open to them except to find for the plaintiff. The sufficiency of the evidence offered was a question of law for the court, and not one of fact for the jury. The learned court below, in submitting the case to the jury, affirmed in the most practical way the proposition that the evidence was sufficient, and we cannot see in what way the plaintiff was injured by the refusal to affirm the point as part of the court's instructions to the jury. The eighth assignment is overruled.

We have carefully gone over the numerous remaining assignments, and, without discussing them, we think it sufficient to say that we discover no error in any of them that would justify a judgment of reversal.

The whole marrow of the case, and the legal principles applicable to the facts of it, are so clearly set forth in the former opinion of our Brother ORLADY, that we conclude by quoting from it: "Independent of the record made in the township book, a jury would be clearly warranted in finding from the

testimony that the question of the liability of the township to Mentzer was carefully considered by the two supervisors, and that liability was properly adjusted by their securing for him a new engine in payment of his claim for the injuries to the old one, and that in furtherance of this settlement of a claim against the township, they signed the order for the engine, directing that it should be consigned to themselves and delivered to Mentzer, after they provided for payment of the freight. Until the time for the payment of the engine arrived they never made any complaint as to the fairness of the transaction, and never to the time of the trial, of the right of Mentzer to hold the new engine in ratification of their contract. . . . There is sufficient in this record to warrant a jury in treating their order for the engine and the acceptance of it, by delivering it to Mentzer, as a joint ratification of their former consultations and deliberation as so to make the township liable for their action. The debt due to Mentzer by the township is paid, the only question now is who should be the paymaster, the plaintiff or the real debtor?"

Judgment reversed and a venire facias de novo awarded.