Detoro *v.* Pittston et al., Appellants.

Argued March 3, 1941. Be-
fore KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD,
RHODES and HIRT, JJ.

*W. L. Pace,* with him *Leo W. White* and *William H.
Gillespie,* for appellants.

258

*Richard B. Sheridan,* with him *J. Justin Blewitt,* for appellee.

OPINION BY STADTFELD, J., July 2, 1941:

This is a mandamus proceeding instituted by Albert Detoro to compel defendants, the City of Pittston, and members of the city council, to reinstate him as a policeman, on the ground that he was entitled to the protection of the civil service laws governing his appointment and dismissal. Plaintiff had been appointed to the position of policeman on February 11, 1936 and was dismissed by city council on April 19, 1938, without presentation of any charge and without a hearing.

Plaintiff's amended petition alleged that he had been appointed a patrolman by the city council of the City of Pittston on February 11, 1936, under the civil service laws relating to cities of the third class, for which appointment he had been duly certified by the civil service examining board appointed by council; that his appointment was by resolution of council; that he was dismissed by resolution of council, adopted April 19, 1938; and that his dismissal was in violation of his rights under civil service laws, no charges having been preferred against him and no hearing having been granted him.

Defendant's return averred that plaintiff was not legally employed or appointed as a policeman; that the action of council on February 10, 1936, in adopting a resolution purporting to create a civil service board, was of no force or effect and a nullity because it was not in accordance with the "Third Class City Law", Act of June 23, 1931, P. L. 932 (53 PS §12198-101 et seq.), and further because the Act of June 20, 1917, P. L. 618, under which council purported to take action, was specifically repealed by Section 4701 of the Act of 1931; that the minute entry of February 10, 1936, as to the receipt by council of the oaths of office of the members of the civil service board was false and fraudu-

lent and a nullity because no such oaths of office were taken on said date, nor were they presented, received or filed on said date; that the minute entry of February 11, 1936, as to the receipt by council of an alleged certificate of qualification from the civil service board was wholly false and fraudulent because no such certificate was furnished by a civil service board lawfully appointed and acting, also because none of the persons therein named had qualified or passed an examination for policeman as required by law, which plaintiff knew, and because none of the provisions of the "Third Class City Law" of 1931 relating to civil service for appointees to the police department were observed or followed; that plaintiff's appointment as a policeman was vacated and he was dismissed only after due investigation and receipt of a legal opinion from the city solicitor; and that because of the invalidity and illegality of plaintiff's appointment or employment as a policeman, defendants were not required by law to prefer charges against plaintiff or accord him a hearing before vacating said appointment or employment and dismissing him. To this return, plaintiff filed a plea and traverse, and joined issue.

At the trial of the case, plaintiff placed in evidence the minutes of council on February 10, 1936, showing the adoption of Resolution No. 2081-A appointing a civil service board and further showing that the oaths of office of the appointees to the said board were presented to council and ordered received and filed. Plaintiff also placed in evidence the minutes of council of February 11, 1936, showing the receipt of a certificate of plaintiff's qualification from the civil service board, in form following: "Certificate from the Civil Service Board qualifying the following, Albert Orr, Robert Galavage, Nicholas Sossong, Peter Munley, Joseph Delaney, George Daley, Herbert Connors and Angelo Desanto and Albert Detoro as having passed the

examination for policemen, was received and ordered filed."

The plaintiff also placed in evidence the following minutes of council of February 11, 1936, showing the adoption of Resolution No. 2084½ appointing plaintiff as a police officer: "No. 2084½, a resolution submitted by Mr. Langan.; be it resolved, by the City Council of the City of Pittston: 'That the following persons, whose names have been submitted and nominated by the Mayor acting in his capacity as Superintendent of the Department of Public Affairs, for the appointment as police officers of the City of Pittston, be and they are hereby appointed as police officers of the City of Pittston; Albert Orr, Robert Galavage, Albert Detoro, Nicholas Sossong and Peter Munley, the aforesaid appointments to become effective February 16, 1936'. On motion of Mr. Gallagher, seconded by Mr. Seibel the resolution was adopted by a unanimous vote on roll call."

Finally, plaintiff placed in evidence, the following Resolution (No. 3171) of council of April 19, 1938, dismissing plaintiff from his position as a policeman: "That the Council of the City of Pittston having failed and neglected to follow the provisions of law in providing for and appointing a proper Board for the examination of applicants for positions in the Bureau of Police in the said City of Pittston and the action of said Council having been irregular and illegal in its creation of a Civil Service Commission on February 10, 1936, and said Council having failed and neglected to follow the provisions of law in securing proper certification from a lawfully constituted Civil Service Board before appointing Albert Detoro as a Patrolman in the Bureau of Police in said City of Pittston on February 11, 1936, said appointment of Albert Detoro is declared invalid and the same is hereby vacated, and the said Albert Detoro is dismissed as a Patrolman in the Bureau of Police in the City of Pittston."

Defendants placed in evidence the original communication from the civil service board dated February 10, 1936, certifying that plaintiff and eight others, had been examined and had passed the required mental and physical examination for the position of policeman (defendants' exhibit No. 1). This is the communication described in the council minutes of February 11, 1936, previously offered in evidence by plaintiff. The court also admitted in evidence the minute book of council for the purpose of showing that the only civil service board, which was in existence between January 10, 1936, and January 6, 1938, was the one appointed on February 10, 1936.

Defendants then called Mr. Frank Earley, a member of the civil service board, and offered to show by him that he signed his oath of office after adjournment of the meeting of February 10, 1936, at which, according to the minutes previously offered by plaintiff, such oaths were received and filed; that at the time of his arrival at the City Hall on February 10, 1936, (after adjournment of the meeting of council earlier on the same day, at which the board was appointed), plaintiff and the other individuals named in the certificate identified as defendants' exhibit No. 1 were already in attendance; that said defendants' exhibit No. 1 was prepared and presented to him for his signature and was signed by him before any attempt was made to examine the men named therein; that the members of the civil service board held no organization meeting, did not prepare and adopt rules and regulations to govern selections and appointments, did not prepare or adopt such rules and regulations as would ascertain and determine the physical qualifications, habits, reputation, standing, experience, or education of the applicants, and did not give any publicity to the intention to hold an examination; that the only effort made to comply with the civil service rules was that he, the witness, prepared a set of eight questions which were submitted to

the men named in the certificate; that the examination was in writing, but that no grades were entered upon the examination papers; that no eligibility list was prepared, and none retained by the civil service commission; that no effort was made to rate the candidates for examination, and no investigation made as to their qualifications for positions as policemen. This offer was objected to and the objection sustained by the court.

At the close of the case, the trial judge affirmed plaintiff's request for binding instructions, and the jury returned a verdict in plaintiff's favor. Defendants' motions for judgment n.o.v. and for a new trial were refused by the majority of the court en banc, in an opinion by JONES, P. J., and it was ordered that a writ of mandamus be issued directing the reinstatement of plaintiff to the position of patrolman in the Bureau of Police of the City of Pittston, and that payment be made to him of the back salary for the time during which he was deprived of his position. From this judgment and order of the court below, this appeal was taken.

On oral argument of this appeal before this court and in appellants' supplemental brief filed thereafter, appellants withdrew from their position that the civil service board had no legal existence as an office and that no validity attached to the acts of its officers. The remaining contentions of appellants are, briefly stated, as follows: (1) that the testimony of the witness Earley, offered in evidence was erroneously excluded, and (2) that the appointment of the appellee to the position of patrolman was irregular and invalid, and hence that he was not entitled either to have charges preferred and a hearing held before dismissal, or to damages as a result of his dismissal, or to reinstatement in this proceeding.

Section 4406 of the "Third Class City Law" of 1931, supra, provides: "Selection of Appointee from Certified

List of Applicants—Said boards shall make and keep, in numerical order, a list containing the names of all applicants for civil service positions in said city who may pass the required mental and physical examinations. Where more than one person takes examinations for any of said positions at the same time, the names of all those successfully passing such examination shall be entered upon the list of eligible names in the order of their respective percentages, the highest coming first. The board shall furnish to council a certified copy of all lists so prepared and kept. Wherever any vacancy shall occur in any civil service position in said city, the city council shall make written application to the president of the proper board, who shall forthwith certify to the city council, in writing, the four names on the list of applicants for such position having the highest percentage. Thereupon the director of the department in which such appointment is to be made shall nominate to the city council one of the four persons whose names are submitted to fill such positions. If the city council approve such nomination, the person nominated shall be appointed to fill such vacancy, and shall be assigned for service in the department. If the council does not approve such nomination, then the director of the department in which such appointment is to be made shall submit another nomination for such position from the remaining three names, and if such nomination is not approved by the council, he shall submit the third name, and if such nomination is not approved, he shall submit the fourth name. The person of the four submitted whose nomination by the director is approved by the city council shall be appointed to fill such a position in the department or as building inspector. In all cases the boards may recommend those in the employ of a department for promotion in case the person recommended is competent for the higher position. The name of the person so appointed shall be immediately stricken from the list of said board,

and the names of the three rejected persons shall immediately be restored to their proper place in the said list: Provided, however, That if the name of any applicant has been submitted to the said council and been rejected three times, then such name shall be stricken from the eligible list."

On February 10, 1936, the civil service board submitted the following certification to city council, identified as defendants' exhibit No. 1: "Pittston, Pa. February 10, 1936. To the Mayor and Council of the City of Pittston, Pittston, Pennsylvania. Gentlemen: We hereby certify that Albert Orr, Robert Galavage, Albert Detoro, Nicholas Sossong, Peter Munley, Joseph Delaney, George Daley, Herbert Connors, and Angelo DeSanto, have been examined by us, and that they have passed the required mental and physical examination for the position of policeman. Yours respectfully, E. R. Myers, M. D., Peter Minichello, Frank Earley, Civil Service Examining Board, Pittston, Pa. Ordered Rec'd & Filed Feb. 11 1936 ...... F. P. Wall. City Clerk.

The minutes of city council disclosed that this certificate was received and ordered filed, and that thereafter a resolution was passed appointing as police officers the first five applicants on the list of eligibles, the plaintiff being third, in the order listed, among those whose names were stated in the resolution to have been submitted and nominated in the same order by the mayor acting in his capacity as superintendent of the department of public affairs.

The certificate of the board, submitted to council, states that the named applicants had been examined by the undersigned civil service examiners and that they had passed the required mental and physical examination for the position of policeman. The civil service examiners, whose signatures were affixed to this certif-

icate were E. R. Myers, M. D., Peter Minichello and Frank Earley.

The record fails to disclose any evidence or offer of evidence tending to show that any fraud, misrepresentation or misconduct was involved in signing of the certification by any of the civil service board members. Nevertheless, appellants offered to introduce in evidence the testimony of Frank Earley, one of the board members, to prove that the candidates had not been rated in their examination. During the entire period of appellee's employment as a policeman covering more than two years, no objection or protest appears to have been made as to the validity of the certification by the board, prior to the time of his dismissal; nor was any objection made as to the validity of the city council's minutes showing the certification to have been duly received and filed. The court below did not err in rejecting this offer of proof attempting to swear away the certification of the civil service board.

In *Geiser Mfg. Co. v. Frankford Twp.*, 40 Pa. Superior Ct. 97, a suit against the township in an action of assumpsit, the plaintiff's claim was sought to be established by the minutes of the supervisors showing that certain action had been taken at a certain time. It was offered on the part of the defendants to prove by one of the supervisors that the meeting recorded in the minutes was never held and that no such action was taken. The offer was admitted under objection. The verdict was for the defendant township. On appeal it was contended that the admission of the evidence to contradict the minutes was error. In sustaining that position this court, in an opinion by HEAD, J., said, p. 102: "The general rule throughout the several states of the union is thus declared in 24 Am. & Eng. Ency. of Law (2d ed.), 197: 'The doctrine that such records, (other than legislative and judicial) are conclusive, receives much support from a large number of cases in

which it is laid down that they cannot be contradicted by parol or other extrinsic evidence, while there are very few cases in which it has been held admissible to contradict directly such records by evidence of this character. That such records may be aided or explained by parol or other extrinsic evidence is undisputed.' ......
Under these circumstances, to permit the township officers to come into court, on the trial of a collateral issue, and swear away the record which had been officially made and permitted to remain without question for a considerable period of time, would seem to us to be a practical nullification of the provisions of the Act of 1834 requiring such record to be kept. In such event, the record would be worse than useless, because in many cases one who relied on it might find himself in a worse position than if it had never been made."

Similarly, it was not error on the part of the court below to reject appellants' offer of other evidence by the witness Earley, including the offer to prove by his testimony, that the civil service board had failed to adopt rules and regulations to govern selections and appointments. To have received the evidence would have sanctioned the right of city council to go behind the certification of the civil service board a number of years after it had been filed and acted upon without question. The appointing power has no authority to do so. See *People ex rel. Mullen v. Sheffield*, 48 N. Y. Supplement 796; In re *Lazenby*, 101 N. Y. S. 5.; Dillon on Municipal Corporations, Vol. 1, page 692 (5th ed.).

Appellants contend, however, that city council had "failed and neglected to follow the provisions of the law in securing proper certification" from the civil service board before appointing appellee as a patrolman. It appears from the record, however, that the civil service board did make and certify a list containing the names of all the applicants for the position who passed the required mental and physical examinations. There was no restriction imposed by Section

4406 of "Third Class City Law", upon the number of names to be so listed and certified; nor did it require that the ratings in terms of percentages appear on the list. It also appears in the minutes of city council (Resolution No. 2084½) that five persons' names had been submitted", and "nominated by the Mayor acting in his capacity as Superintendent of the Department of Public Affairs". It is true that the exact procedure, whereby these names of the persons nominated had been "submitted", does not appear. Hence, it cannot be said, nor does appellee so contend, that a list of names in separate groups of four, had been submitted to city council for each of the five vacancies that were to be filled. In this respect the precise provisions of the act may not have been followed exactly, nor are we inclined to regard the failure to do so as being fatal to the legality of the appointments made. It is clear that the names of the five persons who were ultimately appointed, had been "submitted" and, nominated in *precisely the same order in which they were certified to city council*, in the list of nine names of which these were *the first five*. Had a more circuitous method been followed, of submitting certifications of names in separate groups of four, the same persons could properly have been nominated and appointed. This is true not only because these five names were the first five on the eligible list but also because there was only a total of nine names on the entire list originally made and certified as having passed the requisite examinations. If a series of certifications in separate groups of four had been made preliminary to the nomination and appointment of one eligible person for each vacancy, it is possible that the sixth, seventh, eighth or ninth person on the list might have received the nomination and appointment. Ultimately, the appointment lies with city council which could have rejected any of the persons who were in fact nominated. City council, however, did not reject any of the five persons nominated who ap-

peared on the certification of eligibles as the first five in rank. None of the other eligibles at any time complained of injury by reason of the manner of appointment nor does it appear that the manner adopted did in any way deprive the public of the benefit of the improvement in method intended by the enactment of the "Third Class City Law".

In *Steiner v. City of Reading et al.,* 341 Pa. 164, 19 A. 2d 283, the Supreme Court held that the omission of the director of the department of public safety, to nominate, prior to their appointment, certain persons certified as qualifying for the positions of sanitary inspectors, was not, of itself, sufficient to deprive them of civil service status, the appointments having been made strictly in accordance with the provisions of Article XLIV of the "Third Class City Law" in all other respects. The court in that case stated, with reference to Section 4406. ". . . . . . by its very terms, the majority of council has the absolute right to reject any and all names submitted by the head of a particular department and appoint whomever they see fit to appoint, subject only to the restrictions that the person selected shall have passed the civil service examination and shall have been duly certified to council by the appropriate civil service board."

It is our opinion that, under the circumstances here involved, when there has been a certification of a list of eligibles to city council followed by the submission of the names, nomination and appointment of the first five persons so certified and in the same order to fill as many vacancies, the failure of city council to apply for, and of the civil service board to submit recertifications in separate groups of four, was not, of itself, fatal to the legality of the appointments. Appellee, having achieved civil service status, could be removed only if found guilty, after hearing before city council, of charges made against him "for misconduct, or violation of any law of this Commonwealth, any ordinance of the city

or regulation of the department": "Third Class City Law", Article XLIV, Section 4408: *Seltzer v. City of Reading*, 340 Pa. 573, 17 A. 2d 872.

We affirm the order of the court below, directing that appellee be reinstated in the position of patrolman in the Bureau of Police of the City of Pittston, and the judgment entered in his favor for reimbursement of salary withheld by reason of his unlawful dismissal, less sums received by him meanwhile in any other occupation. Costs to be paid by the City of Pittston.