## Litchfield Township Supervisors

*William A. O'Connor*, for petitioners.

*W. G. Schrier* and *Lilley & Wilson*, for respondents.

ROSENFELD, P. J., May 10, 1948.—In these proceedings petitioners, 27 citizens and owners of real estate of the Township of Litchfield, a second class township, seek to have the court remove two of the three township supervisors of Litchfield Township for neglect to perform the duties of their office.

The three supervisors are Hugh Rogers, who was duly elected at the municipal election in 1945 and whose term expires on the first Monday of January 1952; Alfred Munn who was appointed August 5, 1946, to fill the unexpired term of William Coveney who was elected at the municipal election in 1943, and Claude Arnold who was elected at the municipal election held in 1947. The petition is aimed at the first two only.

The first complaint is that Alfred Munn neglected to file his oath of office with the township secretary, and that Hugh Rogers failed to require the said Alfred Munn to file his oath of office with the township secretary before entering upon the duties of his office as required by section 501 of The Second Class Township Law of May 1, 1933, P. L. 103, §19093-501. The minute book bears no reference to the filing of Alfred Munn's oath, but an oath of office duly signed by him dated August 5, 1946, marked "Respondents' Exhibit 1" was produced in evidence. We are at a loss to know how the date August 5th could appear upon this oath because the testimony is that the meeting was held August 5th in the evening; that Alfred Munn was not at the meeting; that Mildred Northrup, the notary before whom the oath was taken, was not at the meeting, and that the meeting adjourned about 10 o'clock. Though Mrs. Rogers, the secretary, testified that this oath was filed on August 5, 1946, her husband, Hugh Rogers, one of the supervisors, testified that Munn was not notified of his appointment until the day after the meeting, and that Hugh Rogers was the individual who notified Munn of his appointment. Certainly there is a bad discrepancy in the testimony. Counsel for the supervisors can explain this only on the theory that the oath must have been misdated by inadvertence of the notary.

The second complaint is that the supervisors failed to certify to the clerk of the Court of Quarter Sessions of Bradford County the appointment of the said Alfred Munn as supervisor within 15 days after the appointment as required by section 420 of The Second Class Township Law, 53 PS §19093-420, which reads as follows:

"When a vacancy is so filled, the supervisors shall, within fifteen days thereafter, certify such appointment to the clerk of the court of quarter sessions."

The records of the court of quarter sessions show that such certification was not filed until June 9, 1947, 10 months after the appointment which was made August 5, 1946. We find no explanation or excuse for this failure to comply with the above provision of the statute.

The third complaint is that respondent, Hugh Rogers, failed to require the board to organize on the first Monday of January 1946, and the sixth complaint is that Hugh Rogers and Alfred Munn failed to organize the board on the first Monday of January 1947, as required by section 511 of The Second Class Township Law, 53 PS §19093-511. The minutes definitely show that there was no organization effected as required by the statute at the meeting held January 7, 1946. The board was organized on January 18, 1946. The explanation offered was that "There was a paper from the Department of Highways held up the report". Likewise, there was no organization as a board January 6, 1947. The board organized, according to the minutes, on February 6, 1947. The explanation offered by Mr. Rogers for failure to organize in January 1947 was that two auditors were away and no auditing could be done until after another auditor was appointed by the court, and that this was done February 6th.

As we read the statute, no provision is made for excuses of the foregoing type. The statute then in force expressly provided that the supervisors shall meet on the first Monday of each year, and "shall organize as a board by electing one of their number as chairman. The board shall appoint a treasurer and a secretary, who shall be the same person, and who may or may not be a member of the board, except where the board selects a trust company or a banking institution to act as treasurer, in which case it may elect an individual as secretary". The legislature there plainly distinguished between the word "shall" and "may" and we cannot read into the word "shall" any-

thing but a mandatory provision, particularly in view of the fact that the 1947 session of the legislature amended the last clause of the section as follows: "In which case it *shall* elect an individual as secretary". Plainly, the legislature had in mind the distinction between "shall" and "may".

In Butler Township School District Case, 158 Pa. 159, the court held that where the members of a school board failed to meet on the first Monday of June, or within 10 days thereafter, as required by the Act of April 22, 1863, a vacancy existed and the court might fill the vacancies. The court said (p. 163):

". . . The Court did not determine their title to the office, it only determined whether those having an unquestioned title to the office had neglected to perform the official corporate act enjoined by law within the time fixed, which was necessary to their existence as a school board. . . ."

This is evidence of the importance attributed by the Supreme Court to the duty of organizing as prescribed by law.

The fourth and fifth complaints are closely allied to the third and sixth. The fourth complains that Rogers failed to require the board to appoint a secretary and treasurer on the first Monday of January 1946, and the fifth alleges that Rogers and Munn failed to appoint a secretary and treasurer at any time during the year 1946, as required by section 511. The ninth complaint is that Rogers and Munn failed to appoint a secretary and treasurer on the first Monday of January 1947, or at any other time in 1947. Again the minutes are silent, for nowhere does it appear therein that a secretary-treasurer was duly appointed. The testimony, however, shows that in 1945 the wife of Hugh Rogers was designated as the secretary. Mrs. Rogers was the acting secretary signing all the minutes. Since the minutes show that she acted as secretary and that the township supervisors

were present acting as a board while she was secretary, we must conclude that she was properly appointed, and with their approval. With her assistance, the board functioned and kept minutes, even though they were inadequate.

The seventh and eighth complaints allege that Rogers and Munn failed to require the acting secretary to take the required oath of office during the year 1946 and 1947. Section 501 of The Second Class Township Law provided as follows:

"Every person elected or appointed to any township office in any township shall, before entering upon the duties of his office, take and subscribe an oath or affirmation. . . . A copy of such oath or affirmation shall, within ten days thereafter, be filed with the township secretary."

Neither the minute book nor the testimony show that the acting secretary took or filed the required oath of office. The statute does not specifically impose upon the township supervisors the duty of requiring the secretary to take and file such an oath. However, this duty is implied, as said by Judge (now Chief Justice) Maxey in Winton Borough School Directors, 4 D. & C. 779 (1923):

"Section 553 of the School Code requires every collector of school taxes to make a written report to the secretary of the board of school directors at the end of every month, of the amount of taxes collected by him during the same month, etc. It is inferentially within the power, and it is the duty, of the school board to compel the collector to do this."

The 10th, 11th, 12th, and 13th complaints are that Rogers and Munn failed to require the supervisors, "or the supervisors acting as superintendents or road masters" to inspect the roads and bridges of the township during the months of April and October 1946 and 1947, all contrary to section 516, 53 PS §19093-516. That particular section provides that "The township

supervisors, or the supervisors acting as superintendent or road masters, shall . . . (c) Inspect all highways and bridges during the months of April and October of each year". The evidence shows that during this period of time William E. Coveney and Victor Campbell, supervisors, were successively designated by the board as "foreman" (testimony shows this to be synonymous with "superintendent"), and that both of them made the inspection in April 1946, and Mr. Campbell alone made the inspection in the fall of 1946, and in April and October 1947. The inspection was not made by all members of the board. At first we were inclined to disagree with petitioners' contention that such inspection must be made by all members acting together. Though it is difficult to reconcile some of the language employed in this particular section of the statute which, in some instances, directs that they shall "cause such highways and bridges to be kept in repair . . .", and in other instances, the word "cause" is omitted indicating that they must perform the acts themselves. However, such a conclusion does not necessarily follow because section 516 (f) provides that the supervisors shall "(f) Construct and keep in repair all sluices and culverts". Unquestionably, this means that they shall cause the construction and repair, and does not require them to perform the labor themselves. Clause (c) provides that they shall inspect all highways and bridges during the months of April and October. This must be read in connection with clause (k) which provides as follows:

"The township supervisors, or the supervisors acting as superintendent or road masters, shall . . . (k) Inspect all highways and bridges at such times as the township supervisors shall direct, except during the months of April and October."

In other words clause (k) provides that the board may assign to its respective members as road masters or as superintendent, the duty of such inspection except during the months of April and October. Therefore,

we must conclude that during the months of April and October clause (*c*) makes it mandatory upon the board to inspect the highways and bridges. This conclusion is in accordance with many previous decisions. North Union Township Road Master, 18 Dist. R. 263 (1908):

". . . This clearly indicates that it is the duty of the supervisors each year to make a tour of inspection and examination of every part of every public road in the township, . . ."

In Commonwealth v. Rockey et al., 34 Lanc. 101 (1917), wherein the supervisors sought to evade responsibility for the condition of a piece of road in question, and place the entire burden thereof upon one of their number, the court plainly stated that all the members were responsible for all the roads and could not relieve some of their number of responsibility by dividing the township into districts. The court said: "nor has any authority been cited whereby such an arrangement is sanctioned and the supervisors are thus relieved from al responsibility concerning the roads except in their particular districts". Inspection by all supervisors in April and October, as provided by section 516(*c*), is clearly in accord with the view that the supervisors are responsible for all the roads and must make inspection to aid them in the intelligent performance of their duties.

The 14th and 15th complaints are that the said Rogers and Munn failed to divide the township into as many sections as were necessary for the opening of highways obstructed by the snow during the years 1946 and 1947: Section 516(*b*). There is no testimony that the highways were not maintained in the proper state of repair nor is there any testimony that the highways obstructed by snow were not opened. Hence, there was no necessity for any division of the township, for there was no failure to perform the duty required by this section.

The 16th and 17th complaints are that the said Rogers and Munn failed to employ and hire persons, teams, and implements necessary for the removal of obstructions on the township roads caused by snow as provided in section 516(e). In the testimony we find no justification for these complaints.

The 18th and 19th complaints allege that Rogers and Munn failed to report each and every month during the years 1946 and 1947 to the board of supervisors on the matters and in the form prescribed by the Department of Highways, as provided in section 516(j). When Rogers was called for cross-examination, he testified not only that the minute book did not show such a report to the board of supervisors, but also, that he never knew that he had to make such a report as required by section 516(j). As to such a report, he said, "I never heard of one for that matter". Since it was agreed by the counsel for both parties that Alfred Munn would testify as did Hugh Rogers, we must also conclude that he had never heard of this statutory requirement.

The 20th, 21st, 22nd, and the 23rd complaints allege that immediately after the organization the supervisors failed in 1946 and 1947, to divide the township into *one* or more road districts. This complaint cannot be sustained for the evidence is that "We always had just one district, they talked of dividing it, but they always had one district so we continued to have just one district".

The 24th and 25th complaints are that the said Rogers and Munn failed to employ a superintendent for the entire township or a road master for each district, contrary to section 514. Complainants' brief makes no reference thereto, and hence, we may conclude that they have abandoned their position which is untenable in any event, because the record shows they elected Mr. William E. Coveney foreman in January, 1946, and Mr. Victor Campbell, foreman, at the

meeting held on February 6, 1947. These gentlemen were superintendents though they were erroneously designated as foremen. Section 514 further provides:

"This section shall not prohibit the township supervisors from being employed as superintendents or road masters. In such case they shall not be required to employ a superintendent or road masters."

The men employed as foremen were supervisors and since they acted as superintendents, the supervisors were not bound to employ another superintendent.

The 26th and 27th complaints charge that Rogers and Munn failed to fix the wages during the years 1946 and 1947 paid to the superintendent or road masters or laborers or to themselves for work on roads and bridges, contrary to section 514 which provides that "The supervisors shall fix the wages to be paid, . . . to the superintendent or road masters and laborers for work on the roads and bridges". The testimony reads as follows:

"Q. Now, Mr. Rodgers, did the supervisors fix the wages of the road masters and the laborers each year?

"A. No.

"Q. Did they get any wages?

"A. Yes.

"Q. How were their wages fixed?

"A. It was fixed and we carried right along that way."

The resolution appearing in the minute book, January 18, 1946, is as follows:

"Resolution adopted to raise the rate of pay for foremen to 75¢ per hour and the rate of pay for laborers to 60¢ an hour."

The rate of wage thus fixed was continued by agreement through the year 1947. In view of the position which we take in this case, it will not be necessary to decide whether it is imperative for the supervisor to fix the wages of their employes annually or whether they may carry over such a rate from one year to the

next. Unquestionably, the better practice is that such a resolution be adopted each year.

The 28th and 29th complaints charge that Rogers and Munn, during 1946 and 1947, failed to require the township auditors to fix their compensation for attending meetings, and the 30th and 31st charge that Rogers and Munn failed to require the township auditors to fix their compensation for overseeing and working on roads, all contrary to section 515, which provides as follows:

"Supervisors shall receive from the township road funds, as compensation, not less than two dollars and fifty cents, nor more than four dollars for each meeting which they attend. The amount of the compensation for attending meetings shall be determined by the township auditors. The township auditors shall also allow to the supervisors reasonable compensation for making a semi-annual inspection of the roads and bridges. The compensation of supervisors, when overseeing or working on roads, shall be fixed by the township auditors, and shall be not less than three nor more than six dollars per day; but no supervisor shall receive compensation as a superintendent or road master for any day he receives compensation for attending a meeting of supervisors, unless such meeting is held during the nighttime."

Under the law, as it stood many years ago, the office of road supervisor in townships of the second class was honorary and there were no emoluments connected with it. M. Hampton Carson, Attorney General, in an opinion to the State Highway Commissioner December 15, 1905, Supervisors of the Townships of the Second Class, 15 Dist. R. 641, said:

"1. As the statute is silent on the question of compensation, I am forced to the conclusion that the legislature did not intend that the supervisors elected in accordance with the provisions of this act should re-

ceive any compensation whatever for their services, . . ."

The act referred to was the Act of April 12, 1905, P. L. 142. To the same effect are the opinions of Trexler, P. J., in Appeal of Gerhard et al., 3 Lehigh 20, and of the same judge in Weitknecht et al., 3 Lehigh 159. Attorney General Carson further said (p. 642):

"4. No member of the board of supervisors should act or be employed as road master for any district under the authority of section 3, for the reason that the compensation would be fixed by himself and his colleagues on the board, and this would be a direct violation of the spirit if not the exact letter of the law, and in case he should insist upon doing this work, he is not entitled to compensation for the same."

Admittedly, the supervisors received pay for inspecting the roads. The testimony is as follows:

"Q. So that the record will be straight, then you were paid your regular pay as laborers for inspecting the roads?

"A. Yes.

"Q. And did the township auditors ever fix what *that that* was to be your compensation for fixing the roads?

"A. I don't think so."

And again on direct examination, Rogers testified:

"Q. And the auditors fixed the amount which the supervisors paid to themselves for attending meetings?

"A. No."

However, in fairness to the supervisors, this testimony must be read in conjunction with the later testimony of the same witness as follows:

"Q. Now, who told you that the—did the auditors ever tell you in 1946, anything about your compensation?

"A. Yes.

"Q. When?

"A. They said the supervisors set the rate for foremen and they o. k.'d it, and the supervisors set the rate for labor.

"Q. Where did they o. k. it?

"A. Just word of mouth.

"Q. At a meeting?

"A. At a meeting.

"Q. Where did they o. k. it in 1947?

"A. They o. k.'d it a meeting.

"Q. What meeting?

"A. Supervisors' meeting, but they audited accounts and everything. We took it for granted that they o. k.'d it."

Since the presumption is that the auditors performed their duty and since the statute does not fix a time when the auditors shall make the determination of the compensation for attending meetings for the allowance for the inspection of roads and bridges, etc., the court will not, in this instance, condemn the supervisors for failure to procure more formal approval, though we suggest that their records, in the future, clearly contain such approval. Where the statute does not make the duty mandatory or fix the time when it shall be done, the supervisors may not be removed for failure to comply with the statute: Mauch Chunk School Directors Case, 354 Pa. 468 (1946). Especially is that true, where, as here, the auditors gave their approval, though the formal action does not appear in the minutes, for the acts of a municipal corporation may be proven otherwise than by minutes, unless the statute requires that the actions of the board be evidenced by the minutes of a specified content: Price et al. v. Taylor Borough School District et al., 157 Pa. Superior Ct. 188.

The 32nd, 33rd, and 34th complaints allege that Rogers and Munn failed to make sworn statements to the State Department of Highways giving the information required by the Act of May 1, 1933, P. L. 103,

sec. 518, 53 PS §19093-518. The 34th allegation is incomplete in that it alleges that they failed at all times during the year 1947 "To make a sworn statement to the State Department of Highways giving the information". Since the 34th complaint does not specify the nature of the information that was not given, the complaint is insufficient. The 32nd complaint alleges that no such sworn statement was furnished to the Department of Highways during the year 1947, and the 33rd that it was not furnished before February 1, 1947. The proofs do not sustain the allegations. As in many instances in these proceedings, the minutes do not show that such a sworn statement was furnished to the Department of Highways, but the testimony shows that the supervisors filled out and filed every form furnished to them by the Department of Highways and that the supervisors got all the money in the year 1947 that they were entitled to have. The actual date when the reports were furnished to the Department of Highways does not appear in the record, but in the absence of proof that the report was not filed at the proper time, we must conclude that the supervisors complied with the law as to the time when this report should have been furnished, the presumption being that they performed their duties.

The 35th and 36th complaints allege that Rogers and Munn failed to fix the compensation of the township treasurer during the year 1946 and 1947 as required by section 531 of The Second Class Township Law. The statute does not use the phraseology used in the complaint for it does not provide that the "compensation shall be fixed, etc." but it does provide that the "rates shall be settled by the supervisors of the townships with the approbation of the township auditors". On this subject, the minutes are again silent as to a formal action stating what percentage the treasurer shall receive, but the minutes of the meeting of December 1946 show that the secretary-treasurer

made a charge of two percent on the amount paid out which was allowed by the supervisors, and the minutes of the meeting of February 6, 1947, show that the auditors met and "The Auditors examined all books and accounts — approved same — signed the annual financial report and secretary-treasurer's bond". The minutes of the meeting of December 1, 1947, show that Mrs. Rogers was allowed certain commissions. The minute book shows approval by the auditors on January 19, 1948, as follows:

"The auditors examined all books & accounts approved same—signed the financial Report."

Following the reasoning of the preceding paragraph, we hold that the evidence does not sustain the 35th and 36th complaints.

The 37th and 38th complaints aver that Rogers and Munn failed "during the year 1946 to fix a tax rate at a mill rate or expressing the rate of taxation in dollars and cents for each one hundred dollars of assessed valuation". The same complaint is made as to 1948 taxes. Section 906 provides:

"Whenever the supervisors of any township shall, by resolution, fix the rate of taxation for any year at a mill rate, such resolution shall also include a statement expressing the rate of taxation in dollars and cents on each one hundred dollars of assessed valuation of taxable property."

Again the minutes are silent. The minutes do not contain any resolution fixing any tax rate either at a mill rate or on a dollar and cents rate. Counsel for the supervisors have not presented any brief except a short one in reply to complainants' brief concerning the tax accounts for 1946 and 1947. However, they did call the court's attention to a case arising in Bradford County, Elsbree v. Keller, 35 Pa. Superior Ct. 497. That case is not controlling since it holds only that the omission to make a proper entry in the books does not justify the court in restraining the collection

of the taxes. The supervisors, in this instance, did not rest upon a presumption of regularity of their proceedings, but testified positively and affirmatively as to their action in fixing five mills for the year 1947. The testimony is that the only record of their action is found in "Exhibit 9". An examination of "Exhibit 9" discloses a copy of the annual budget of Litchfield Township for the year 1947. On the back of this form, which was furnished by the Department of Internal Affairs, there is a page entitled "Tax Levy and Appropriation Resolution". This appears absolutely blank so that nowhere in the record does it appear that there has been a compliance with the above statutory requirement. No resolution fixes any rate, and the record does not disclose the fixing of either a mill or a dollar rate.

The 39th and 40th complaints charge that Rogers and Munn paid commissions to the tax collector in the year 1946 and 1947 without first requiring from the said tax collector an affidavit that she had complied with all requirements of her office as to notice of taxables, etc. Section 8 of The Local Tax Collection Law of May 25, 1945, P. L. 1050, 72 PS §5511.8 provides as follows:

"Before any allowance is made by any taxing district, or by the auditing authority thereof, for commissions due the tax collector, he shall make an affidavit setting forth that he has complied with the provisions of this act in respect to notice to taxpayers."

Admittedly, allowances were made for commissions to the tax collector in 1946 and 1947. When Rogers was asked whether, prior to the drawing of the warrant to pay the tax collector, she was required to give an affidavit in accordance with this provision of this act of assembly, he replied "no". It was admitted that Munn would have made this same reply to this question. Therefore, we must conclude that the supervisors

made these allowances in defiance of the positive mandate of this act of assembly.

In Crane's Appeal et al., 344 Pa. 624 (1942), Mr. Chief Justice Maxey said: (p. 627)

". . . The ordinary signification of the verb 'shall' as used in the acts cited is imperative and not permissive unless the latter meaning is required by the context. Here there is no such contextural requirement. The verb 'shall' in a statute is mandatory beyond all doubt when the public welfare requires that it be given such meaning. The duties commanded of these respondents in the acts cited are duties whose performance are obviously vital to the public welfare. When these duties are not performed, mismanagement of the township affairs is the usual corollary and fraud and corruption are thereby facilitated. For cases holding that the verb 'shall' when used in constitutions and statutes leaves nothing to discretion, see . . .". The court in that case was referring directly to The Second Class Township Law.

In Baldwin Appeal, 153 Pa. Superior Ct. 358 (1943), President Judge Rhodes said: (p. 361)

"Whether a particular statute is directory or mandatory does not depend upon its form, but upon the intention of the legislature, which is to be ascertained from a consideration of the entire act, its nature, its object, and the consequences that would result from construing it one way or the other. . . . It has been repeatedly said that whether a statute is mandatory or not depends upon whether the thing directed to be done is of the essence of the thing required."

Applying the foregoing rules, we conclude that it was irregular to make the allowances made in this case without requiring the aforesaid affidavit. The notices required to be given are for the protection of the taxpayer in that he may have notice of the amount due and the time when and the place where he may pay the taxes, etc. It also aids the municipality in the

prompt collection of the maximum amount of the tax due.

The 41st and 42nd complaints aver that Rogers and Munn failed, during each and every month of the years 1946 and 1947, to require the tax collector to pay over to the township treasurer before the 10th of each month, all monies collected. Section 25 of The Local Tax Collection Law, 72 PS §5511.25, provides:

"The tax collector shall on or before the tenth day of each month, or oftener, if required by ordinance or resolution of the taxing district, make a true, verified statement, in writing, to the secretary or clerk of the taxing district, or in the case of cities of the third class, to the director of accounts and finance, if and as required, for all taxes collected for such taxing district during the previous month or period, giving the names of taxables, the amount collected from each, and the total amount of taxes received. The collector shall *pay over* on or before the *tenth day of each month* or oftener, if required by ordinance or resolution of the taxing district, to the treasurer of the taxing district all moneys collected as taxes during the previous month or period and take his receipt for the same. The tax collector shall, at any time on demand of any taxing district, exhibit any duplicate in his possession showing the uncollected taxes as of any date."

Here again the minute book fails to show that the monthly reports as required by the statute were made. Respondents, however, undertook to prove that the reports were made, and in support thereof, they introduced four township treasurer's receipts for taxes collected. These reports give only the following information as to time: from August, 1947 to — 19—; from October, 1947 to — 19—; from 19— to 19—; from 19— to January 1, 1948. Nothing on the receipts indicates when the information was exhibited to the supervisors, whether before the 10th day of each month or thereafter. From the failure of the township super-

visors to give complete evidence as to the time when these reports were submitted and proof that other reports were submitted, particularly in view of the fact that only four reports were proven covering the period of time from August 1, 1947, to the end of the year, we believe that we have a right to conclude that the supervisors presented their case most favorably to themselves and that they did not demand compliance with the above-mentioned statutory provision.

The 57th and 58th complaints aver that Rogers and Munn failed to require the township tax collector during each and every month of 1946 and 1947 to make a true, verified statement in writing to the secretary of said township of all taxes collected during the prior month giving the names of the taxables, the amount collected from each, and the total amount of taxes received for said township. What we have said concerning the 41st and 42nd complaints is equally applicable here because they refer to the same section of the above mentioned act of assembly.

The 43rd and 44th complaints allege that the said Rogers and Munn settled with the tax collector during the years 1946 and 1947, and delivered the new duplicates without first having the said tax collector fulfill all requirements for the said settlement.

Section 26 of The Local Tax Collection Law, 72 PS §5511.26 provides as follows:

"The tax collector shall make a complete settlement of all taxes for each year with the proper authority of the taxing district, to be designated by the taxing district at such time as the said taxing district may fix, but not later than the first day of July of the year succeeding the one for which the taxes were levied, unless such time shall be extended by resolution of the taxing district. . . .

"Upon final settlement of a tax duplicate, the tax collector shall take an oath or affirmation in writing and subscribed by the tax collector, that he has made

a true and just return of all taxes collected by him. Such oath or affirmation shall be administered by the officer of the taxing district empowered to make settlement, who shall have power to administer the same, and shall be filed with such officer."

Section 31 thereof provides that "unless settlement of a duplicate is made by a tax collector of a borough, town or township of the second class, or by any tax collector of school taxes in the manner provided by this act, he shall not be entitled to the duplicate or duplicates of any taxing district with which settlement has not been so made for any succeeding year during his term, and a tax collector shall be appointed in his stead in the manner provided by law".

Again the minute book shows no record that the tax collector made any such oath or affirmation as required above, and failed to show that the tax collector complied with the requirements of the Tax Collector's Act of 1945 in settling with the township. There is nothing in the minutes to show that the tax collector was required to give the above-mentioned affidavit upon the settlement of the tax duplicate either for the 1945 duplicate or for the 1946 duplicate. In this instance, the township supervisors did not rest upon any presumption as to the legality of their conduct, but produced records of their settlement with the tax collector for the 1946 duplicate. They produced no affidavit required by the statute nor did they offer any explanation for its absence. We are, therefore, compelled to conclude that, since the records should be in their possession and they should have knowledge of what transpired, and perhaps it was the sole knowledge of what took place, no such affidavit was furnished by the tax collector.

More than that, though the settlement of the 1946 duplicate did not take place until December 1, 1947, still in defiance of the positive mandate of the law, the supervisors delivered the 1947 duplicate to the tax

collector in August 1947, and the tax collector actually collected $598.55 of the 1947 duplicate prior to the time when the supervisors had settled the 1946 duplicate:

"Q. So that your minute book shows that your tax collector had collected $598.55 of the '47 duplicate prior to the time that you had settled for your 1946 duplicate?

"By the Court:

"Is that correct?

"By the Witness:

"Yes."

The excuse offered for this noncompliance with the law was that the tax collector's husband died on June 7th and left her with a farm and a lot to do. However, the law provides for no such excuse. The act very definitely provides that unless a complete settlement is made as provided by the act, the tax collector shall not be entitled to the duplicate or duplicates of any taxing district. The tax collector found time to settle with the county commissioners, who accepted no such excuse:

"Q. But you did settle with the county commissioners and got your duplicate on August 7th, didn't you?

"A. My tax warrant was dated August 6th, so I got my duplicate must be on the 7th."

The value of such a mandatory provision in the statute should be apparent to the residents of Bradford County where as many as four tax collectors have been in default at one time. This results in losses, not only to the community, but also to sureties, and for the protection of the sureties as well as the taxing authority, strict compliance with this provision is a necessity.

The 45th and 46th complaints are directed at the failure of Rogers and Munn to fix the compensation of the tax collector for the years 1946 and 1947, contrary to section 35 of The Local Tax Collection Law of

1945, 72 PS §5511.35. Again there is no reference in the minute book to any proceeding whereby the compensation of the tax collector was fixed. The supervisors testified as follows:

"Q. Is that true of all the compensation which the supervisors pay, either themselves or other persons, that is, that it has been continued from previous years by agreement?

"A. Yes."

However, this testimony was not true, for the minutes show that in January 1946 the tax collector was paid as follows for the 1945 collection:

"Commissions at 2% on $612.93......$12.26
"Commissions at 5% on $451.42......$22.57"

At the meeting in January 1947 the records show:

"Amount of 1946 duplicate ......$1,284.82
"Collected to date ..............$1,252.28
"Maude Fox, Commission 5% ....$   52.10"

Obviously an increase in the commissions had been made without any record appearing on the minute book. While the statute is silent on the question of the time when the commissions should be fixed, we are of the opinion that the commissions should be fixed in advance. Since the commission was ultimately fixed to the satisfaction of all parties and the public has suffered no loss, we would be unwilling to remove the supervisors because of these complaints alone.

The 47th and 48th complaints aver that during the years of 1946 and 1947 Rogers and Munn, as supervisors, failed to fix a time and place for the transaction of township business. The statute provides (section 512), 53 PS §19093-512:

"The township supervisors shall meet for the transaction of business at least once each month, at a time and place to be fixed by the board, but they shall not be paid for more than sixteen meetings in any one year. . . ."

Here again the minute book fails to show that they ever fixed a time and place for meeting. The statute makes it mandatory for them to meet at least once a month, and we interpret the statute also to mean that they shall fix the time and place for the meetings in advance thereof. This does not necessarily require the supervisors to hold meetings at the same place each month, or prevent them from designating a different place for a subsequent meeting. We conclude that the legislature intended the public to have knowledge of the time and place of the meetings so that one having business before the board might be able to confer with the board at a time when it was convened for the purpose of transacting business. It is fundamental that official authority or power must be exercised by a board acting as such, and it is, therefore, appropriate that the public should have an opportunity to meet with the board at such a time, and not be relegated to conversations with the individual members whenever they can be contacted. We believe that the legislature had this in mind when it used the foregoing language which contrasts with the language used in section 511 concerning the organization meeting:

"The supervisors of each township shall meet, at a convenient time and place, on the first Monday in January of each year. . . ."

There is no evidence that the supervisors definitely adjourned to meet at anyone's house. At various times they met at the Town Hall, later at the home of Hugh Rogers, later at the home of Campbell, then at the home of Rogers, then at the home of Campbell, then at the home of Rogers. There is no proof that the time and place of any one of these meetings was fixed by the board.

The 49th and 50th complaints aver that Rogers and Munn failed to keep minutes of their proceedings.

The relevant portion of the statute provides (section 513), 53 PS §19093-513, as follows:

"The board of township supervisors shall keep minutes of its proceedings, and such other books as they may find necessary in the performance of their duties. All such books shall be open for the inspection of any taxpayer or any representative of the Department of Highways at all reasonable times, and shall be submitted to the township auditors when they meet to audit the accounts of the treasurer and other township officers. The township supervisors shall deliver such books, papers, and accounts to their successors."

The minutes, in our opinion, show a gross violation of this duty. As we have frequently stated in this opinion, the minutes, in connection with most of the charges made in this action, reveal nothing. The minutes, such as they are, do not disclose the information which one would expect to find therein. Minutes of meetings which were supposedly three hours long occupy but a few lines. The inspection of any taxpayer or a representative of the Department of Highways would reveal but little that would be helpful and certainly the auditors could secure almost no assistance or information therefrom. Future supervisors to whom the minutes are delivered pursuant to statute will be unable to determine what action was taken. The minutes of a secretary, if properly kept, are invaluable in obviating a necessity of a lawsuit in many instances, and are also prima facie evidence of the actions of the municipal body. It is held that they are conclusive in the absence of proof of fraud, corruption, bad faith, or a clear abuse of power: Commonwealth ex rel. v. Schubmehl, 19 Pa. C. C. 478. In Coal Township School Directors, 290 Pa. 200, 207 (1927), the court said:

". . . In connection with the numerous and exceptionally important duties of secretary, as prescribed in the School Code, it must be remembered that in the abundant and continuous litigation involving transactions of school boards in the matter of taxation, proceedings for the increase of indebtedness of school

districts, acquiring of real estate and the construction of school buildings, the issue of school bonds, and numerous other matters of vital concern to the taxpayers, the minutes are frequently of paramount importance as evidence in court, and are found to have been kept so negligently and so illegally that, in this case, grave and costly difficulties ensue. . . ."

That language fits this case exactly. The supervisors and secretary have failed to appreciate the vital importance of minutes.

In Elsbree v. Keller, supra—and we repeat this is a case arising in Bradford County—the court held that the failure to record certain proceedings on the minute book did not invalidate the proceedings for the collection of the tax. The lower court said, page 502: "The record, even at this date, we think, could be completed in order to conform to the facts." This case simply illustrates the well established rule which is as follows: "It is well settled that the acts of a municipal corporation may be proved otherwise than by its records or some written document": Bohan v. Avoca Borough, 154 Pa. 404, 410 (1893). "While it is the duty of the town clerk or secretary to keep a record of the proceedings of the supervisors, the lack thereof will not invalidate their action": Jefferson County v. Rose Township, 283 Pa. 126, 131 (1925).

Of course, the foregoing rule is inapplicable where the statute requires that the action of the municipality shall be evidenced by recorded minutes in a manner prescribed by statute. In the case of Waltman v. Albany Township School District, 64 Pa. Superior Ct. 458 (1916), another case arising in the County of Bradford, the court held that, under the Act of 1911, the appointment of a teacher in the common schools was not valid unless there had been "an affirmative vote of a majority of the members of the board of school directors duly recorded, showing how each member voted." In that instance a school teacher who had

honestly performed her duties was unable to recover the value of her services because the secretary of the school board failed to record the minutes properly. This is an outstanding illustration of the necessity for and the importance of proper minutes. In Geiser Manufacturing Co. v. Frankford Township, 40 Pa. Superior Ct. 97 (1909), the court said, on page 101, in referring to the Act of April 15, 1834, P. L. 537, which provided that "the town clerk in each township ... shall keep a record of the proceedings of said officers. . . ." ". . . The evils which flow from a failure to obey this statute, thus leaving the future investigation of important township affairs to be conducted only in the light of the uncertain memories of former officials, have been more than once pointed out by this court." The court there held that the minutes of the township clerk allowed to remain for a considerable period of time are conclusive of the fact that a meeting therein described was held, and cannot, in the absence of any allegation or proof of fraud, be contradicted by parol evidence on the trial of a collateral issue. In the case of American Road Machine Co. v. The Township of Washington, 9 Pa. Superior Ct. 105 (1898), the court said (p. 107):

"No two of the four supervisors, who participated in making the contract for the purchase of the crusher, recollect the particulars of the transaction with any degree of certainty, and we have the anomalous fact of the liability of this township depending upon the confusing statements of the supervisors in regard to their own acts while under the tutelage of the plaintiff's agent; all of which would have been avoided if they had acted at regularly convened meetings, and the township clerk, who, by the Act of April 15, 1834, P. L. 555, sec. 99, is the clerk to the supervisors of the township, had kept a record of the proceedings of the said officers open to the inspection of any person who might have occasion to search therein."

In Pennsylvania Railroad v. Montgomery County Passenger Railway, 167 Pa. 62 (1895), the court said (p. 71):

". . . The township books in the custody of the town clerk are the records of the township, and should afford evidence of the action taken by the supervisors in all matters of public importance. A paper in the pocket of a contractor or of some officer of a corporation is not the proper evidence of action by the township, or the school district. The action needed is not that of the individuals who compose the board, but of the official body. Thus it was held that a contract signed by the members of the school board separately did not bind the district. The best evidence of their official action was their minutes kept by the secretary: Wachob v. Bingham School District, 8 Phila. 568. For the same reason a contract signed by the president and secretary was held to be invalid. It had not been acted upon by the board when in session: School District v. Padden, 89 Pa. 395. One supervisor may bind the township by an act that is ministerial in its character: Dull v. Ridgway, 9 Pa. 272; Pottsville v. Norwegian Township, 14 Pa. 543. Not so however when the act is one that requires deliberation and the exercise of judgment: Cooper v. Lampeter Township, 8 Watts, 125; Township v. Gibboney, 94 Pa. 534; Township v. Parson, 105 Pa. 360. In such cases the supervisors must be together and their action must be taken in their official character, and should appear upon the township book kept by the town clerk. . . ."

If record of action of a deliberative nature should appear in the minutes, it certainly follows that the minutes should contain records of actions of a legislative nature. "The power to impose taxes for the support of the Government is legislative": Commonwealth v. Delaware Div. Canal Co., 123 Pa. 594. Subject to constitutional limitations, the taxing power may be delegated but that delegation must be kept within de-

fined lines, with supervisory control always vested in elective bodies. Wilson et ux v. Philadelphia School District et al., 328 Pa. 225. The minutes of the meetings in this case are devoid of any evidence of action taken to levy taxes. It is our carefully considered opinion that the minutes kept by the supervisors in this case fall far short of the statutory requirement and that it is the mandatory duty of the supervisors to keep proper minutes, even though many of their actions may be proved otherwise than by the minutes.

Complaints 51 and 52 allege that Rogers and Munn failed to require the township secretary to keep a record of the proceedings of the township officers in a minute book during the years 1946 and 1947. Complaints 53 and 54 aver that Rogers and Munn failed to require the township secretary to enter in the minute book during the years 1946 and 1947 the annual reports of the township supervisors. Complaints 55 and 56 allege that Rogers and Munn failed to require the township secretary to enter in the minute book during the years 1946 and 1947 the annual reports of the township auditors. The applicable statute is section 540 of The Second Class Township Law as amended by the Act of April 18, 1945, P. L. 257, which provided that the secretary should not only keep a record of the proceedings of the officers in the minute book in accordance with the then existing law, but added the requirement that the secretary should record the annual reports of the township supervisors and the township auditors and all court orders relative to the laying out, opening, and vacation of roads. We conclude from the language of the statute and the use of the word "shall" that the legislature intended these provisions to be mandatory. However, in the consideration of this phase of the case, we shall not overlook the fact that in 1947 the legislature saw fit to delete from section 540 the requirement that the annual reports of the township supervisors and the township

auditors shall be recorded by the secretary in the minute book, leaving only the requirement that all court orders relative to the laying out, opening, and vacating of roads shall be recorded in the minute book.

Section 540, we believe, should be read in conjunction with section 513, which requires the board of township supervisors to keep minutes of its proceedings. The duty of requiring minutes to be kept by the secretary is imposed upon the board of supervisors by section 513, even though section 514 also imposes upon the secretary the duty of keeping the minutes. Judge (now Chief Justice) Maxey said in Winton Borough School Directors, 4 D. & C. 779:

"Charge 3. Said school directors neglected to obtain written reports of all taxes collected by the tax collector each month of the year.

"Section 553 of The School Code requires every collector of school taxes to make a written report to the secretary of the board of school directors at the end of every month, of the amount of taxes collected by him during the same month, etc. It is inferentially within the power, and it is the duty, of the school board to compel the collector to do this."

That rule is applicable in this case. The supervisors should have compelled the secretary to record the annual reports of the supervisors and auditors.

The minutes introduced in evidence do not contain copies of the auditors' reports nor do they contain copies of the annual reports of the township supervisors. Summaries of the auditors' reports do appear in the minutes.

The records themselves, as we have heretofore stated, fail to measure up to the reasonable requirements of minutes in that they fail to include records of the legislative and deliberative action of this board of supervisors. We do not understand why the secretary, during the course of these meetings, which often lasted

two or three hours, could not have found time to make reasonably adequate records. Again referring to the words of Judge Maxey in the Winton Borough School Directors case, supra, p. 782: "School directors, like other public officials, must understand that public office is not a public snap. Those who hold public office must faithfully discharge their responsibilities. . . ."

Public officers such as township supervisors and school directors can be removed only for failure to perform such duties as are mandatory under the respective statutory provisions: Crane's Appeal, supra, which refers to supervisors; Kline Township School Directors' Case, 353 Pa. 91 (1945). The general rules for the determination of those duties which are mandatory are set forth in Crane's Appeal, supra, and Baldwin Appeal, supra.

We have endeavored to give the supervisors in this case the benefit of every reasonable doubt because we believe that the courts should lend all possible encouragement to public officers.

We also have not overlooked the fact that the legislature has taken cognizance of the technical difficulties confronting municipal officers. The Act of May 15, 1945, P. L. 538, limited surcharges of public officials to the financial loss sustained by the public subdivision by reason thereof and required that there should be taken into consideration as the basis of the surcharge the results of the act, error, or omission of the officer, and the results had the procedure been strictly according to law, except in cases involving fraud or collusion on the part of the officer. The Act of May 28, 1945, P. L. 1089, sec. 5, amending The General Borough Act, contained a similar provision with the additional provision that any official knowingly and wilfully acting contrary to law, and knowingly and wilfully failing to act as required, is guilty of a misdemeanor, and on conviction he may be fined $100, and his office declared vacant.

The Act of July 10, 1947, P. L. 1481, sec. 503, amending The Second Class Township Law, provides that if any township officer refuses or neglects to perform his duties, the court of quarter sessions "may declare the office vacant and appoint another in his stead, to hold office during the term of the officer deposed, or to make such other order as to the court may seem just and proper". The last clause is new but we conclude that it was passed for the purpose of giving the court discretion in the matter of the removal of such officers. The discretion exercisable by the court should be a sound discretion resting upon the circumstances in each case: Schlaudecker v. Marshall et al., 72 Pa. 200 (1872).

We believe that it would be an abuse of discretion not to remove the present supervisors, under the circumstances, despite the fact that many highly regarded citizens of Litchfield Township seek to have us overlook the failure of the two supervisors to comply with the law. The failure of the supervisors to certify to the clerk of the court of quarter sessions the appointment of Alfred Munn as supervisor within 15 days after his appointment; their failure to organize promptly; their failure to require the secretary to take an oath and file the same; their failure to make inspection of the roads in April and October; their failure to report once per month to the board of supervisors on forms prescribed by the Department of Highways; their failure to fix by resolution a rate of taxation in dollars and cents and also a mill rate, and most particularly, their failure to require the tax collector to file the necessary affidavit at settlement and to report and pay over the taxes each month, and the delivery of a 1947 duplicate to her before final settlement with her for her 1946 duplicate, and their failure to keep minutes of their deliberative and legislative actions require their removal, in our opinion.

In doing this we do not wish to impugn their good intentions or integrity. No act of dishonesty was

alleged or proven. At this time we wish to reiterate what we said to the witness representing the Pennsylvania Department of Highways. We believe that the department can aid the deliberations of the supervisors throughout the State and the work of their secretaries by providing suggested forms of minutes covering deliberative and legislative action which should appear in the minutes. Such minutes will aid the officers of the townships which cannot afford to hire counsel to attend monthly meetings. . . .

Since the foregoing opinion was written and while the court was seeking proper persons to be appointed supervisors to fill the vacancies, defendants filed the following stipulation:

"To the Honorable the Judges of the above named Court:

"The undersigned, Hugh Rogers and Alfred Munn, respondents in the above entitled proceedings respectfully represent that they have been advised by their solicitors that the requirement that a duplicate should not be issued to a tax collector until the former duplicate has been fully settled is mandatory.

"In the summer of 1946 the husband of Maude Fox, Tax Collector for Litchfield Township, died. There remained unpaid on her duplicate a small amount and because of her recent bereavement we did not require her to make immediate settlement and did permit her to have the duplicate. This amount was fully paid in a short time and the township suffered no loss. But it now appears to us that an act which we thought was one of common courtesy was forbidden by the law. We, therefore, formally enter our consent that the offices of supervisor, held by each of us, may be declared vacant.

"Respectfully submitted

S/ Hugh H. Rogers
S/ Alfred Munn"

"In the presence of
 S/ J. Roy Lilley
 S/ W. G. Schrier"

*Decree and order*

And now, May 10, 1948, in view of the foregoing stipulations and pursuant to the foregoing opinion, the court declares the office of Hugh Rogers and the office of Alfred Munn, as supervisors of Litchfield Township, vacant and instead of Hugh Rogers, does appoint Manley Simmons, supervisor, and instead of Alfred Munn, does appoint Francis W. Aumick, supervisor, Defendants are directed to pay the costs.